**Barry O'Neal WILLIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 155–87.**

Court of Criminal Appeals of Texas,
En Banc.

May 16, 1990.

Charles Tessmer, Dallas, for appellant.

John Vance, Dist. Atty., and Patricia Poppoff Noble, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S AND THE STATE'S PETITIONS FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

A jury found appellant, Barry O'Neal Willis, guilty of theft for which he received a sentence of two years confinement. He appealed. The Dallas Court of Appeals reversed appellant's conviction finding that the trial court had erred in refusing to submit in its jury charge an instruction concerning appellant's good faith purchase. *Willis v. State,* 724 S.W.2d 87, 91 (Tex. App.–Dallas 1986). The lower appellate court also decided that the statutory presumption provided in Texas Penal Code Section 31.03(c)(3) was constitutional. 724 S.W.2d at 88–90. The State sought discretionary review of the Court of Appeals' holding that appellant was entitled to the jury instruction and appellant sought discretionary review from the holding that the presumption was constitutional. We granted both petitions and now affirm in part, reverse in part, and remand the case to the Court of Appeals.

## THE CONSTITUTIONALITY OF TEXAS PENAL CODE, SECTION 31.03(c)(3)

Section 31.03(a) of the Texas Penal Code provides that a person commits an offense if he "unlawfully appropriates property with the intent to deprive the owner of the property." Section 31.03(b)(2) provides that "appropriation of property is unlawful if ... the property is stolen and the actor appropriates the property knowing that it was stolen by another." Further, Section 31.03(c)(3) creates an evidentiary presumption and provides that:

"[A]n actor engaged in the business of buying and selling used or secondhand personal property, or lending money on the security of personal property deposited with him, is presumed to know upon receipt by the actor of the stolen property ... that the property has been previously stolen from another if the actor pays or loans against the property $25 or more (or consideration of equivalent value) and the actor knowingly or recklessly: (A) fails to record the name, address,

and physical description or identification number of the seller or pledger; (B) fails to record a complete description of the property including the serial number, if reasonably available, of other identifying characteristics; or (C) fails to obtain a signed warranty from the seller or pledger that the seller or pledger has the right to possess the property. It is the express intent of this provision that the presumption arises unless the actor complies with each of the numbered (sic) requirements."

After the evidence was presented in the guilt/innocence phase of trial, the trial court instructed the jury regarding the 31.-03(c)(3) presumption and, pursuant to V.T.C.A., Penal Code, Section 2.05, the trial court further instructed that:

"The facts giving rise to such presumption must be proven beyond a reasonable doubt.

"If such facts are proven beyond a reasonable doubt, you may find that the property in question ... had been previously stolen, if it had been, but you are not bound to so find.

"Even if you find that the defendant knew that the property in question ... had been previously stolen, the State must prove beyond a reasonable doubt each of the elements of the offense, as set out on the following page, and if you have a doubt as to the existence of a fact or facts, as set out above, giving rise to such presumption, the presumption fails and you will not consider it for any purpose."

Appellant insists that the presumption is unconstitutional regardless of the trial court's application of Section 2.05. He relies upon *Bellamy v. State*, 742 S.W.2d 677 (Tex.Cr.App.1987), wherein we held that the 31.03(c)(3) presumption, as applied in that case, was unconstitutional. As applied in the case that is before us today, however, we agree with the Court of Appeals and find that the presumption is constitutional for the following reasons.

Presumptions and inferences are evidentiary devices and in criminal law parlance they are said to be either mandatory or permissive. The distinction between a mandatory presumption and a permissive presumption is determined by the effect that each has upon the evidence. The Supreme Court, in *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), explained:

"Inferences and presumptions are a staple of our adversary system of factfinding. It is often necessary for the trier of fact to determine the existence of an element of the crime—that is an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts. The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular elemental facts involved an on the degree to which device curtails the factfinder's freedom to assess the evidence independently." 442 U.S. at 156, 99 S.Ct. at 2224 (citations omitted).

Essentially, there are two types of mandatory presumptions: one type requires the fact finder to find an elemental fact upon proof of a particular predicate fact or facts—it does not allow the trier of fact to find otherwise (a "conclusive presumption"). The other type of mandatory presumption requires the accused to disprove the elemental fact once the predicate fact has been established (a "rebuttable presumption"). Both types of mandatory presumptions are deemed unconstitutional because they eliminate the State's constitutionally required burden of proving guilt beyond a reasonable doubt. See *Carella v. California*, —— U.S. ——, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (per curium); *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983) (plurality opinion); *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Justice Scalia recently opined that:

"The [Supreme] Court has disapproved the use of mandatory conclusive presumptions not merely because it conflicts with the overriding presumption of inno-

cence with which the law endows the accused, but also because it invades the factfinding function which in a criminal case the law assigns solely to the jury. The constitutional right to a jury trial embodies a profound judgment about the way in which law should be enforced and justice administered. It is a structural guarantee that reflects a fundamental decision about the exercise of official power—a reluctance to entrust plenary powers over life and liberty of the citizens to one judge or group of judges. A defendant may assuredly insist upon observance of this guarantee even when the evidence is so overwhelming as to establish guilt beyond a reasonable doubt. That is why the Court has found it constitutionally impermissible for a judge to direct a verdict for the State." *Carella v. California,* —— U.S. ——, ——, 109 S.Ct. 2419, 2421–22, 105 L.Ed.2d 218 (1989) (citations omitted) (Scalia, J., concurring).

■ Unlike the mandatory presumption, the permissive presumption allows, but does not require, the trier of fact to infer the elemental fact or ultimate fact from the predicate evidentiary fact or facts. It places no burden on the accused to refute or disprove the elemental fact once the predicate facts have been established. Since it does not relieve the State's burden of proving guilt beyond a reasonable doubt, a permissive presumption is generally deemed constitutional if the reviewing court determines that a rational trier of fact could make the connection permitted by the presumption. See *Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).

■ "[T]o specify the procedural consequences of a presumption [and] to satisfy ... constitutional strictures," the Legislature has enacted V.T.C.A. Penal Code, Section 2.05. See Searcy and Patterson, Practice Commentary, V.T.C.A. Penal Code, Section 2.05. Section 2.05 provides:

"When this code or another law establishes a presumption with respect to any fact, it has the following consequences:

"(1) if there is sufficient evidence of the facts giving rise to the presumption, the issue of the existence of the presumed fact must be submitted to the jury, unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact; and

"(2) if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, as follows:

"(A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;

"(B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of offense sought to be presumed exists, but it is not bound to so find;

"(C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and

"(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, or any other element of the offense charged, it shall acquit the defendant and say by its verdict not guilty."

As long as Section 2.05 is adequately incorporated into the court's charge containing a presumption, that presumption will be construed to be "permissive." *Bellamy,* 742 S.W.2d at 682. See also Ray, *Texas Law of Evidence,* Section 58 at 94 (Tex.Practice 3rd Ed.1980).

Appellant does not contest the incorporation of Section 2.05 into the charge in this case, noting in his brief that "[t]he jury was instructed in the precise terms of the statutory presumption and on the restrictions for use of the presumption pursuant to Texas Penal Code, Sec. 2.05." Appellant's only argument is that "regardless of Sec. 2.05," the presumption in question must pass the constitutional tests of *Tot v.*

*United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943) and *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). Appellant' Brief on the Merits at 7. Nevertheless, we note that the 31.03(c)(3) presumption in the jury charge before us, introduces the presumption with: "[a] person is presumed to know," and then continues to follow the statutory language. In *Bellamy*, this Court found that the use of the phrase "a defendant is presumed to know" may lead to a finding that the applicable presumption is mandatory. *Bellamy*, 742 S.W.2d at 677 (dicta). In that case, however, there was more than just the improper wording leading into the statutory language of the presumption; the charge did not otherwise adequately incorporate the 2.05 language. This Court was troubled by the charge's failure to "clearly inform the jury that it was free to reject the presumption, even upon proof of the predicate facts." 742 S.W.2d at 684. Unlike *Bellamy*'s charge, the charge in this case unequivocally informs the jurors that "if [the facts giving rise to the presumption] are proven beyond a reasonable doubt, you may find that the defendant knew that the property in question … had been stolen, if it had been, *but you are not bound to so find.*" (Emphasis added.) Also, the charge in this case clearly traces other 2.05 language and, further unlike *Bellamy*, instructs the jury that "if you have a reasonable doubt as to the existence of a fact or facts, as set out above, giving rise to such presumption, the presumption fails and you will not consider it for any purpose." We can conclude that notwithstanding the improper introductory language in the charge under consideration, a reasonable juror would understand that he or she was free to accept or reject the presumption making it a permissive presumption.

In *Allen*, the Supreme Court determined that when reviewing a permissive presump-

tion the party challenging the validity of the presumption must prove that it is invalid "as applied to him." The Court reasoned that:

"[b]ecause th[e] permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt standard' only if, under the circumstance of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination." *Allen*, 442 U.S. at 157, 99 S.Ct. at 2225.

As applied to this case, the presumption that appellant knew that the goods he received were stolen is entirely rational, given the fact that appellant failed to maintain proper records which gave rise to the presumption.

The indictment under which appellant was tried alleged that he appropriated property "knowing that the property was stolen by another, whose name and identity is Dean Landrum." Landrum testified at trial. He related that during the month of October 1980, he burglarized several homes in the Dallas area. At the time of the burglaries, Landrum was fifteen years old.[1] Between October 1st and October 20th, 1980, on eight different occasions, Landrum sold to appellant valuables seized during these burglaries.[2] Appellant owned and operated a jewelry store. He recorded some of the transactions with Landrum as the sale of scrap metal on store forms— listing the weight of the jewelry, quoting current market prices for either gold or silver and then multiplying or dividing by various amounts to come to a "scrap total."[3] In these transactions, Landrum

---

1. A Dallas police officer testified that Landrum appeared to be much younger than fifteen.

2. During one transaction, appellant told Landrum to act as if he were a customer if anyone

should enter the store. Appellant also asked Landrum to bring him specific items.

3. These forms do not describe what particular piece of jewelry is being appraised. That is, the

signed appellant's forms using the alias name of "Dean Drake." Appellant never asked Landrum for identification, for warranty of ownership, or for proof of from where the items came. In total appellant paid Landrum $1,600 for property actually worth more that $15,000.

That appellant never asked for identification and address from, and failed to record the physical description of a young stranger selling over $15,000 worth of valuables supports the inference that appellant knew the goods were stolen. That appellant neither inquired as to the fifteen year old's means of acquiring the goods nor obtained the warranty as to the youngster's right to possess the goods also supports the inference that appellant knew the goods were stolen. In short, the presumption that appellant knew the items that he purchased from Landrum to be stolen is a perfectly rational conclusion flowing from the lack of recordation of the dealings that appellant had with Landrum. In this case, the 31.-03(c)(3) presumption is rational and thus constitutional.

Because the presumption in this case is rational to the particular facts of the case, appellant's reliance upon *Bellamy v. State*, is misplaced. In that case, this Court determined that the 31.03(c)(3) presumption was unconstitutional when applied to that defendant's circumstances. Bellamy was a college professor who at times engaged in the buying and selling of secondhand goods. At his trial for theft, Billy Ebarb testified that he sold Bellamy various items of silver which he, Ebarb, had taken in various burglaries. The trial court instructed the jury with regard to the 31.-03(c)(3) presumption and on appeal Bellamy contested the rationality of the presumption as applied to him. This Court reversed the conviction, holding that:

"[E]ven if we agree with the Court of Appeals' conclusion that the presumption here was permissive, we must reject that court's conclusion that it was valid under *Ulster.* For we conclude that 'as applied' to appellant, the particular dealer of secondhand personal property in this

case, failure to keep the records required by § 31.03(c)(3), supra, does not 'more likely than not' lead to the conclusion he knew the silverware he obtained from [a burglar] was stolen.

\* \* \* \* \* \*

"Nothing in the facts as we have recited them *ante* tends to shore up the particular inference that because this appellant failed to record the information ... he must have known the silverware in issue here was stolen. If anything, the record seems to cut against it. The State's own witness testified ... that hundreds of items of secondhand personal property were seized from appellant's home. No records were found as to any of these items. Of the hundreds of rings, watches and other valuables found, only two rings were positively shown to be stolen, though as many as 75 private citizens were called in to identify them. From all the facts and circumstances it would appear that, as to appellant, failure to record the data required by the statute was not at all an indicator that, more likely than not, he knew that any given item he may have bought had been unlawfully acquired. Therefore we conclude that even under the test announced in *Ulster* the presumption contained in § 31.03(c)(3), supra, was unconstitutional as applied to appellant." *Bellamy*, 742 S.W.2d at 684–685.

Thus, the facts of *Bellamy* clearly set that case apart from the instant case. In the case before us, appellant was a professional in the jewelry business; however, his acts in procuring the stolen property from Landrum without the proper recording procedures, were anything but professional. Here the presumption as applied is reasonable and the Court of Appeals' holding on this issue is affirmed.

### THE PROPRIETY OF INSTRUCTIONS REGARDING APPELLANT'S GOOD FAITH DEFENSE

■ The Court of Appeals, after determining that the 31.03(c)(3) presumption as

only physical description of the item is its     weight.

applied in this case was constitutional, also held that the trial court erred in refusing to instruct the jury regarding appellant's "good faith purchase" of the stolen goods. Appellant had requested the following charge:

> "There is evidence in this case that the defendant, Barry O'Neal Willis bought the property in question in good faith and had no knowledge that it had been stolen by Dean Landrum at the time he received it. Now if you believe that the evidence, or you have a reasonable doubt thereof, that the defendant ... bought the property in good faith and had no knowledge that it had been theretofore stolen ..., if it was stolen, at the time he received it, you will find the defendant ... not guilty."

The Court of Appeals initially observed that appellant's instruction was nothing more than a request for the trial court to comment impermissibly upon the weight of the evidence, writing that "[i]t is an affirmative statement that there is evidence proving a disputed fact (i.e., that the defendant purchased the goods in good faith)." *Willis*, 724 S.W.2d at 90, citing *Andrews v. State*, 652 S.W.2d 370, 374 (Tex.Cr.App. 1983). Nevertheless, the Court of Appeals determined first, that the requested instruction was sufficient to call the court's attention to the necessity of including a good faith defense instruction in the charge, and second, that because there was some evidence introduced at trial giving rise to this defense, the trial court should have submitted some good faith instruction to the jury. *Willis*, 724 S.W.2d at 90–91. The Court of Appeals reversed appellant's conviction relying solely upon *Sanders v. State*, 707 S.W.2d 78 (Tex.Cr.App.1986), for its holding:

> "A good faith purchase defense is not required to be included in the charge when the defendant denies any participation in the crime.... *Sanders v. State*, 707 S.W.2d 78, 81 (Tex.Crim.App. 1986). However, when a defendant acknowledges participation in the offense, his good faith purchase defense is not just a denial of the crime. It is a defense which justifies his conduct in the same

manner as an affirmative defense and must be included in the charge. Id. at 81 n. 3. In the instant case, appellant admits buying goods from Landrum, but denies knowing the goods were stolen. Thus, his good faith purchase defense which was raised by the evidence and requested to be included in the charge was erroneously omitted by the trial court." *Willis*, 724 S.W.2d at 91.

The State in its petition for discretionary review questions the Court of Appeals' holding, asserting that *Sanders* holds just the opposite of what the Court of Appeals determined. Specifically, the State asserts that "[a]ppellant's proposed 'defensive issue' merely negated the element of knowledge," and then cites *Sanders* for the proposition that "if the alleged defensive theory merely negates as element of the offense, then no affirmative charge must be given." State's Brief on the Merits at 10, citing *Sanders*, 707 S.W.2d at 81 and *McCulla v. State*, 712 S.W.2d 870 (Tex.App.—Houston [1st Dist.] 1986, no pet.). We granted review in this case to examine the apparent conflicting statements in *Sanders*.

In *Sanders* this Court held that the defendant was not entitled to a "good faith" instruction. The *Sanders* Court determined that defenses "require[] the accused to admit the commission of the offense but to justify or excuse his actions so as to absolve him of criminal responsibility for engaging in conduct which otherwise constitutes a crime." 707 S.W.2d at 81. From this premise, the Sanders Court concluded that where the defendant denies *all* participation in the offense, he has not raised a defense and because the defendant's testimony in *Sanders* "implicitly denied *any* participation" in the offense (as opposed to admitting that he did the charged act but that he was justified in so doing), he was not entitled to an instruction. 707 S.W.2d at 81. As a side note to this holding, the majority commented that, "[t]estimony by a defendant of good faith purchase in other circumstances might acknowledge participation, thus justifying a defendant's conduct in the same manner as an affirmative defense." 707 S.W.2d at 81 n. 3 (dicta).

Thus, the majority, at least implicitly, concluded that if such testimony existed the defendant would be entitled to a good faith defense instruction in the trial court's charge to the jury.

■ Initially, we observe that *Sanders'* premise—all defenses require the defendant to admit commission of the offense—is not correct. For example, and applicable to the fact situation of this case, if a defendant testifies that he believed certain items he purchased to have been honestly obtained by the seller, he merely negates an element of the offense of theft by receiving property stolen by another (i.e., that he obtained the items *knowing* they were stolen). He does not negate the entire offense (for he may still possess the items) but merely creates an issue of mistaken belief as to only the culpable mental state element of theft. In such circumstances, the defendant would be entitled to a defensive instruction of "mistake of fact," see V.T.C.A., Penal Code, Section 8.02, and should not be required to admit the other elements of the crime. *Woodfox v. State*, 742 S.W.2d 408, 409–410 (Tex.Cr.App.1987). Indeed, the Practice Commentary to Section 8.02 clearly delineates that "[m]istake of fact constitutes a defense *only if it negates the culpable mental state.*" Searcy and Patterson, Practice Commentary, V.T.C.A., Penal Code, Section 8.02 (emphasis added). Thus, the *Sanders* Court spoke too generally in deciding that all defenses were in the nature of confession and avoidance. But having disavowed this language from *Sanders* and determining that in some circumstances the defendant will be entitled to defensive instructions although

he has not admitted the crime, does not resolve whether appellant in this case was entitled to a good faith instruction. We hold that he was not so entitled for the following reasons.

■ We begin our analysis with the basic understanding that the power to create and define offenses rests within the sound discretion of the legislative branch of government. See *State ex rel. Smith v. Blackwell*, 500 S.W.2d 97, 104 (Tex.Cr.App. 1973). This necessarily includes the power to establish and define the defenses to criminal offenses. As Judge Duncan, writing for a majority of this Court observed in *Meraz v. State*, 785 S.W.2d 146 (Tex.Cr. App.1990): "[A]n affirmative defense ... is within the State's power and responsibility to regulate the procedures under which such laws are carried out, so long as the traditional notions of due process are not offended." 785 S.W.2d at 152, citing *Patterson v. New York*, 432 U.S. 197, 200, 97 S.Ct. 2319, 2322, 53 L.Ed.2d 281 (1977).

The Legislature has indeed enacted certain defenses to acts otherwise defined as crimes. In Chapter Eight of the Texas Penal Code, the Legislature has created the "General Defenses to Criminal Responsibility." [4] Along with the Chapter Eight defenses, the Legislature, in Chapter Nine, has defined certain conduct to be "justified" in particular situations notwithstanding penal laws to the contrary. See V.T. C.A., Penal Code, Section 9.02 ("it is a defense to prosecution that the conduct in question is justified under this chapter").[5] Moreover, the Legislature has within certain particular penal provisions defined cer-

---

4. These defenses are: Insanity, V.T.C.A., Penal Code, Section 8.01; Mistake of Fact, V.T.C.A., Penal Code, Section 8.02; Mistake of Law, V.T. C.A., Penal Code, Section 8.03; Duress, V.T.C.A., Penal Code, Section 8.05; and Entrapment, V.T. C.A., Penal Code, Section 8.06.

5. Chapter Nine of the Penal Code is entitled "Justification Excluding Criminal Responsibility" and includes a list of conduct that the Legislature has determined to be defenses to prosecution. See V.T.C.A., Penal Code, Section 9.02. These include: (in Subchapter B) Public Duty, V.T.C.A., Penal Code, Section 9.21 and Necessi-

ty, V.T.C.A., Penal Code, Section 9.22; (in Subchapter C) Self-Defense, V.T.C.A., Penal Code, Section 9.31; Deadly Force in Defense of a Person, V.T.C.A., Penal Code, Section 9.32; Defense of a Third Person, V.T.C.A., Penal Code, Section 9.33; Protection of Life or Health, V.T. C.A., Penal Code, Section 9.34). In Subchapter D of Chapter Nine the Legislature has defined the defenses relating to "Protection of Property." In Subchapter E one will find special defenses pertaining to "Law Enforcement," and in Subchapter F of Chapter Nine, there are those defenses relating to "Special Relationships."

tain defenses to conviction.[6] However, nowhere in the general defenses listed in Chapter Eight, the justifications excluding criminal responsibility listed in Chapter Nine or the theft statue under which appellant was tried, is there a legislative enactment of the defense of "good faith purchase." As such, our holding in *Williams v. State*, 630 S.W.2d 640 (Tex.Cr.App.1982), controls. In that case, Judge Clinton writing for an unanimous Court held:

> "The appellant objected to the charge because it did not 'contain the law and defense of accident.' There is no law and defense of accident in the present penal code, and the bench and the bar would be well advised to avoid the term 'accident' in connection with offenses defined in the present penal code.
>
> \* \* \* \* \* \*
>
> "In the former law of accident, the term 'intentional' meant something like 'voluntary.' Therefore, the correct meaning of the term 'accident' was that the actor did not voluntarily engage in the conduct. But 'accident' was also used under the former penal code to describe a hodgepodge of defenses, including the absence of a culpable mental state, conduct that was voluntary but that differed from the intended conduct, mistake of fact, and an unexpected result. It is understandable that the drafters of the present penal code rejected a term which had so many meanings in law...." *Williams*, 630 S.W.2d at 644 (footnotes and citations omitted).

Accord *Browning v. State*, 720 S.W.2d 504, 508–509 (Tex.Cr.App.1986).[7] Because the penal code contains a defense specifically applicable to the facts as presented in this case—to wit, the "mistake of fact" defense found in Section 8.02—appellant was not entitled to an instruction on a non-penal code defense.

We readily recognize that if evidence admitted before the jury at a trial raises a defensive issue the defendant is entitled to have a requested instruction concerning this defense submitted to the jury in the court's charge. See *Woodfox*, 742 S.W.2d at 409, and the cases cited therein. In the case that is before us, had appellant requested an instruction concerning mistake of fact he would have been entitled to it pursuant to V.T.C.A., Penal Code, Section 8.02. *Jackson v. State*, 646 S.W.2d 225, 227 (Tex.Cr.App.1983). See also *Woodfox*, 742 S.W.2d at 409. The question remains as to whether appellant's requested instruction was sufficient to put the trial court on notice that a mistake of fact issue should have been incorporated into the charge. See *Williams*, 630 S.W.2d at 643. Therefore, we reverse the holding of the Court of Appeals and remand the case to it to determine whether appellant's requested instruction was sufficient to inform the court that a proper instruction should have been given. If necessary, the Court of Appeals should also address appellant's remaining points of error which were not resolved in the original opinion.

---

**6.** E.g., V.T.C.A., Penal Code, Section 42.02(c) (it is a defense to prosecution for rioting that the assembly was at first lawful and when one of those assembled manifested an intent to engage in riotous conduct, the actor retired from the assembly); V.T.C.A., Penal Code, Section 42.11(b) (it is a defense to prosecution for the cruelty to animals that the actor was engaged in bona fide experimentation for scientific research).

**7.** In *Browning,* Judge Teague commented that instructing the jury with regard to presumptions not specifically listed in the penal code was erroneous. He wrote that giving an instruction that one who enters a habitation at night does so with the intent to commit a burglary should not have been included in the jury charge because "there is nothing in our burglary statute or the penal code that might reflect or indicate that such a presumption gives rise to proof of intent to commit the offense of burglary." 720 S.W.2d at 509. Cf., *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973) (trial court did not err in instructing the jury that it could presume the defendant knew that the goods he possessed were stolen when he was in recent possession of such goods although no such presumption is statutorily defined).