**Phyllis I. McLAIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–90–00102–CR.**

Court of Appeals of Texas, Tyler.

Dec. 31, 1991.

Rehearing Denied June 30, 1992.

19. Ill.Rev.Stat. art. 110 (1963) (permitting the state to retain one percent of a person's speci-fied bail as a "bail bond cost").

Clifton Holmes, Longview, for appellant.

Amy Blalock, Tyler, for appellee.

PER CURIAM.

Appellant was convicted on her plea of guilty of the offense of desecration of a venerated object. The jury assessed punishment at six months in jail and a $2,000.00 fine. We will affirm.

Appellant was charged by information with "intentionally, or knowingly desecrat[ing] a place of burial by defacing, damaging and physically mistreating the grave of SAM HARRIS located on Denman Road 2-½ miles Northwest of Overton Smith County, Texas in a way PHYLLIS I. MCLAIN knew would offend one or more persons likely to observe or discover her actions" on or about May 15, 1988, without legal authority. After her plea of guilty was accepted by the trial court, appellant brought an oral motion in limine seeking to prevent admission of evidence of abuse of a corpse on the ground that such evidence would show an extraneous offense. She argued that once the grave was disturbed, the offense with which she was charged was complete. From the argument of counsel for both parties it is apparent that they disagreed as to when the offense of desecration of the burial place stopped and when the offense of abuse of a corpse began.

In an attempt to obtain a preliminary ruling from the trial court, the parties stipulated that the evidence would include the testimony of Teresa Ferguson that appellant tried to break the corpse's neck, pulled on the corpse's leg, pulled the tie off the corpse, and tried to pull the head and a leg off of the corpse; the testimony of Louis Willis Jackson that appellant suggested they "take the head home" and was in the grave trying to pull the head off the corpse; the testimony of Linda Kay Spencer that appellant was in the grave pulling on things and made the statement that she was going to take the head off. The trial court ruled initially that the testimony of appellant being in the grave pulling on parts of the corpse would be admissible. The state argued that the evidence was admissible to show the entire transaction, to show the element of the offense that the conduct would seriously offend someone, and to show intent, motive, preparation, plan, absence of mistake. Appellant argued that the evidence of an extraneous offense did not fall within one of the acknowledged exceptions, that the offense charged was completed on May 13, 1988,[1] and any other conduct was not relevant, and was highly inflammatory and prejudicial. The trial court ruled that evidence of the appellant trying to pull off the corpse's leg and head was admissible, as was evidence of her pulling on the clothing of the corpse. Appellant was allowed a running objection to all such evidence.

In the State's opening statement, the prosecutor referred to the digging up of the grave and appellant getting down into the grave. Appellant objected to those remarks. The state's first witness was Willie Pearl Austin, the seventy year old niece of

---

1. The evidence showed that appellant and her companions went to the grave on two consecutive nights, covering the calendar dates of May 13, 14, and 15, 1988.

Sam Harris. Ms. Austin testified that she was notified that something had happened at the cemetery where her uncle had been buried and she went out to the cemetery. When asked to describe what she saw there she said "Oh, I tell you when I went out there that it was something that I had never seen before, and it took a good man to be able to stand it. I was very disturbed of some of the things that I had saw." When she said that she saw his hand on top of the grave, appellant objected. She testified that the corpse's underwear was torn off and that his casket was all torn up. Photographs of the grave were admitted through Ms. Austin.

Louis Jackson, an eighteen year old, who was present during the offense, testified that on the night of May 13, 1988, at appellant's suggestion, a group went to the graveyard where someone took a shovel of dirt from the grave, whereupon the dirt caved in down to some plywood. According to Jackson, on that night all that happened was that a shovel was used to hit the coffin. The next night, a group, including appellant, returned to the graveyard, finished digging up the grave and opened the coffin. Jackson testified that he found a man's shirt on the ground next to where he was standing. He said that he saw appellant in the grave trying to pull the head off the corpse.

Linda Spencer testified that she was in the group that went to the graveyard on May 13, 1988. She testified that on that night everyone was just drinking, that nothing went on at the grave, other than maybe a shovel of dirt was removed from the grave. The next night, Spencer said, there was a lot of digging by appellant and two of the men who were with them. When the grave was opened, the smell caused Spencer to move away and she did not view it after it was opened.

Teresa Ferguson, a third person present at the grave yard, also testified. She said that the reason the group returned the second night was to finish digging up the grave. Ferguson said that the appellant had stated that she wanted to find a grave with "Jason" on it and dig it up. Ferguson said that she stayed in the car and did not participate or actually see what went on at the grave. When the others, including appellant, got back in the car, Ferguson noticed a bad odor, and the windows had to be rolled down. According to Ferguson, appellant said she needed a bath because she stunk. She testified that appellant laughed about the event. She also said she heard appellant say that "she tried to get the head off, and she grabbed it and pulled it up, but the stuff had gone up underneath her fingernails."

Appellant put on one witness who testified concerning appellant's mother's poor health, appellant's current employment, her lack of prior convictions and her fitness for probation.

█ The sole issue at the trial was what punishment to assess. *Wilkerson v. State,* 736 S.W.2d 656, 659 (Tex.Cr.App.1987). A guilty plea does not limit the State's right to offer evidence; relevant facts admissible under a not guilty plea are admissible under a plea of guilty. *Id.*

█ Appellant's sole point on appeal is that the evidence about what happened to the corpse constituted inadmissible evidence of extraneous offenses. She argues that any evidence other than that about disturbing the grave, showed abuse of a corpse, a separate offense from that to which she plead guilty.

Appellant was charged with and plead guilty to the offense of desecration of a venerated object, specifically a place of burial. That offense is defined by statute as "intentionally or knowingly desecrates a place of worship or burial." TEX.PENAL CODE ANN. § 42.09(a)(2) (Vernon 1989) (current version at TEX.PENAL CODE ANN. § 42.-09(a)(2) (Vernon Supp.1991)).[2] The statute defines "desecrate" as meaning "deface, damage, or otherwise physically mistreat in a way that the actor knows will seriously offend one or more persons likely to observe or discover his action." TEX.PENAL

---

**2.** The statute was amended in 1989, making desecration of a burial place a third degree felony as opposed to a class A misdemeanor. Appellant plead guilty to a misdemeanor charge.

CODE ANN. § 42.09(b) (Vernon 1989). The statute does not define "burial place."

The offense of "abuse of a corpse" is defined by the Penal Code, as relevant to this case, as "intentionally or knowingly disinters, disturbs, removes, dissects, in whole or in part, carries away, or treats in a seriously offensive manner a human corpse." TEX.PENAL CODE ANN. § 42.-10(a)(1) (Vernon 1989).

The threshold question before us is whether the evidence of appellant's actions, beyond that of removing the dirt from the grave of Sam Harris, was evidence of an "extraneous" offense. Appellant claims that the testimony about her treatment of the corpse of Harris was evidence of another offense, to wit: abuse of a corpse. The state argues that the evidence of actions taken by appellant throughout the two nights is evidence of the offense charged, desecration of a burial place, because the definition of "desecrate" requires that the action be done in a way "that the actor knows will seriously offend one or more persons likely to observe or discover his actions." Further the state argues that the evidence was admissible to show the context in which the offense occurred.

We find no guidance in case law interpreting section 42.09. Those few cases involving the statute generally relate to its former prohibitions of desecration of "a state or national flag" and removal of a fence enclosing a cemetery. We cannot agree with appellant that the mere removal of a shovel of dirt from the ground above the grave constituted a completed offense under the statute. We find it unlikely that such conduct would be sufficient to put the actor on notice that her actions would seriously offend someone seeing her or coming upon her handiwork. That conclusion however, does not end our inquiry because the evidence allowed in this case went beyond showing the removal of dirt covering the coffin to showing the conduct of appellant and her cohorts after the coffin was opened and the end results of that conduct.

We are not persuaded that the proof in this case showed an "extraneous offense." Appellant has not shown that there necessarily had to have been a point at which the offense of desecration of the burial place ended and abuse of a corpse began. The language of section 42.09(a)(2) is broad, prohibiting any desecration of a place of burial. As charged in this case, the burial place was defined as the grave of Sam Harris. The entire course of conduct of appellant in removing the dirt, opening the coffin, removing and distributing the clothing and "rearranging" the corpse, resulted in the appearance of the burial place as it was discovered, and testified to, by the deceased's niece. We cannot say that a person would have been "seriously offended" if they had come upon the grave and discovered it with the dirt removed, or with the dirt removed and the coffin open. We are confident in saying that any person of other than aberrant sensibilities would have been seriously offended, and that appellant knew that a person would have been so, upon observing or discovering her actions as the evidence in this case showed them to be.

■ Although some of appellant's conduct as proved by the State may have shown that the offense of abuse of a corpse as defined in section 42.10(a) was also committed, that circumstance does not prevent that the State from relying upon the same conduct to prove an offense under section 42.09. The Legislature has the discretion to criminalize the same conduct under more than one statute,[3] and the State may put on all proof necessary to establish the offense charged. While under the facts of this case, appellant probably could not have been punished for both offenses, *see Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) because in proving the "seriously offend" element of desecration of a venerated object the State relied upon facts that may have proved the offense of abuse of a corpse, the fact that the State here chose to

---

**3.** *See Willis v. State,* 790 S.W.2d 307, 314 (Tex. Cr.App.1990); *State ex rel. Smith v. Blackwell,* 500 S.W.2d 97, 104 (Tex.Cr.App.1973); *Mont-* *gomery v. State,* 145 Tex.Cr.R. 606, 170 S.W.2d 750, 753 (1943); Tex.Const. art. III, § 1 (Vernon 1984).

charge her with only one of the available offenses, does not make the facts of the other offense were inadmissible, so long as they were proof of a necessary element of the offense charged.

Because the State would have been entitled to show appellant's actions from start to finish if it had been required to prove appellant's guilt of the offense of desecration of a venerated object beyond a reasonable doubt, they were entitled to put on the same proof at the punishment stage of this unitary proceeding after appellant plead guilty as charged. The evidence of appellant's actions toward the corpse of Sam Harris was not evidence of an extraneous offense. That evidence went to show the offense to which she plead guilty, desecration of the burial place of Sam Harris. The trial court did not abuse its discretion in overruling appellant's objections to the evidence. The point of error is overruled.

The judgment of the trial court is affirmed.