

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-16-00437-CR**
**NO. 02-16-00438-CR**
**NO. 02-16-00439-CR**

MARK MERCER                                             APPELLANT

V.

THE STATE OF TEXAS                                           STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NOS. 1402709D, 1402716D, 1402717D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Mark Mercer appeals from his three convictions for assault on a public servant and concurrent twelve-year sentences. He argues that he is entitled to a new trial based on jury-charge error and on the State's jury argument. Finding no reversible error, we affirm the trial court's judgments.

---

[1]*See* Tex. R. App. P. 47.4.

# I. BACKGROUND

Mercer had three outstanding arrest warrants for "assaultive conduct and evading police." On January 29, 2015, at between 8:00 to 10:00 a.m., Tarrant County Sheriff's Deputies Jacqueline Mouton and Charles Chambers were dispatched to Mercer's apartment to execute the warrants in separate, marked police cars. Both were in uniforms, which consisted of black shirts and pants, gun belts, radios, colorful Tarrant County Sheriff's Office patches on each arm, and gold sheriff badges and patches on the front of their shirts.

When they arrived at the complex, Mouton got a key for Mercer's apartment from the management office. When they got to the door of Mercer's third-floor apartment, Mouton and Chambers knocked several times, calling Mercer's name, and announced, "Sheriff's office, warrants." When they got no response, Mouton tried the key but it would not turn. An employee of the complex who came to check the door told them that the door had been deadbolted from the inside. Mouton called her supervisor who sent Sergeant Jerry Brown and Deputies Grant Leddy and Robert Hernandez to assist Mouton and Chambers.

After directing Mouton and Chambers to put on their tactical vests[2] for a forced entry, Brown knocked "quite loud[ly]" with the side of his fist and

---

[2]This is a Kevlar vest that is "clearly marked on the front with Tarrant County Sheriff's Department" in black and gold lettering on the front and back.

announced, "Sheriff's office, arrest warrant, come to the door."[3] There was no response. Brown then unscrewed the outside lens of the door's peephole and saw "an eyeball looking back at [him]." He moved to the side of the door, waited a few seconds, and looked again to find that the peephole had been covered from the inside. Brown again knocked loudly on the door to "give the person inside one more opportunity to open the door before [they] do it forcibly." After no response, Leddy forced the door open with a battering ram.

Hernandez entered and went to the left toward the kitchen, and Chambers entered and went to the right. When Mouton entered, "she announced that gun, gun, somebody's got a gun, and she began to back up away from the apartment." Chambers immediately backed out of the apartment, but Hernandez was still inside. Brown moved into the doorway and saw "a person standing inside of a dark doorway just on the other side of the kitchen area with a weapon pointed directly at the door and at [the officers]." Brown shouted at the person "not to fire, that we had an officer inside." The person, who was still holding a gun aimed at the officers, "said, just simply, then back out." Hernandez backed out with Brown, and the person slammed the door and barricaded himself inside. After a seven-hour standoff, SWAT officers were able to arrest the person,

---

[3]When questioned how loud his knock and announcement had been, Brown stated, "Make no mistake that if there's somebody in that apartment, they're going to know somebody is knocking on their door."

Mercer, after breaching a shared wall in Mercer's apartment and sending in a canine officer, Oso, to immobilize him.

Mercer was separately indicted with the first-degree felony offenses of aggravated assault against three public servants—Mouton, Brown, and Hernandez—which were consolidated for trial. *See* Tex. Penal Code Ann. § 1.07(a)(41) (West Supp. 2016), §§ 3.02, 22.02(a)(2), (b)(2)(B) (West 2011). At trial, Mercer testified that he had done private-security work in the war zones of Iraq and Afghanistan, leading to a traumatic brain injury, back injuries, an injury to his knee, and a diagnosis of post-traumatic stress disorder. On January 28, 2015, Mercer had taken Hydrocodone and Ambien to help him sleep. He denied hearing officers knocking or knowing that the "horrific crash" was caused by officers. He testified that he could not see who entered his apartment because his apartment was dark and the light coming through the open doorway was very bright. He believed the people who entered his apartment were intruders and his drawing a gun on them was an effort to protect himself and his property. After the SWAT team arrived, Mercer determined that the intruders had been police officers but did not end the standoff earlier because he was afraid he would be shot. A jury found Mercer guilty and assessed his sentence at twelve years' confinement for each offense. In imposing the sentences, the trial court ordered that they run concurrently. *See* Tex. Penal Code Ann. § 3.03(a) (West Supp. 2016); Tex. Code Crim. Proc. Ann. art. 42.08 (West Supp. 2016).

Mercer now appeals and contends in four issues that several preserved jury-charge errors were harmful. He also asserts that the State made an improper jury argument that relieved the State of its burden to prove intent beyond a reasonable doubt.

## II. JURY ARGUMENT

In his fourth issue, Mercer argues that the State improperly removed the State's burden to prove intent by a reasonable doubt in its closing jury argument to which he objected:

> Let's talk about the PTSD and the drugs. PTSD. Okay. But taking these drugs, there is an item in that charge that talks about voluntary intoxication, that is not a defense. And you heard [that] based upon his PTSD and his injection of a muscle relaxer and a narcotic and the purported Ambien, I'm not surprised. It wasn't separated. It was together. And that is the reason the voluntary intoxication is in there, because he willingly, and he admitted he took those, does not excuse the state of mind that those drugs place him in.
>
> [Defense counsel]: Objection, Your Honor. They have to prove knowledge beyond a reasonable doubt. It's in the charge. That's a misstatement of the law.
>
> THE COURT: Overruled.
>
> [Defense counsel]: Ask for a running objection to this line of argument.
>
> THE COURT: You may have that.
>
> [The prosecutor]: That's why it's in there. Voluntary intoxication is not a defense to the commission of a criminal offense in the State of Texas.
>
> [Defense counsel]: Objection. That's a misstatement of what's in the charge. It doesn't say criminal offense. It says crime.

5

THE COURT:  Overruled.

[The prosecutor]:  Not a defense.  Because otherwise people would get up on the stand and go, I didn't realize what was happening, I was high.  When you take it yourself and you put yourself in that position, you don't get the benefit of that.

In each jury charge, the trial court instructed the jury that "[v]oluntary intoxication is not a defense to the commission of a criminal offense."  Mercer does not argue on appeal that these charge instructions were in error;[4] he argues that the State's argument incorrectly informed the jury that voluntary intoxication "does in fact bear on knowledge and intent."

In Texas, voluntary intoxication cannot negate the applicable culpable mental state for an offense.  *See* Tex. Penal Code Ann. § 8.04(a) (West 2011).  And that is what the State argued: Mercer's voluntary intoxication at the time of the offenses could not be found to have rendered him incapable of forming the requisite intent—intentionally or knowingly.  The State did not argue that it did not have to prove intent beyond a reasonable doubt.  We conclude that the State's argument was a correct statement of the law and overrule issue four.  *See State v. Renteria*, 977 S.W.2d 606, 608 (Tex. Crim. App. 1998) ("[T]here is no error in correctly arguing the law, even if the law is not included in the court's charge."); *cf. Donnelly v. State*, No. 02-14-000303-CR, 2015 WL 3422140, at *3 (Tex. App.—Fort Worth May 28, 2015, no pet.) (mem. op., not designated for

---

[4]Indeed, each was correct.  *See Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009); *Taylor v. State*, 885 S.W.2d 154, 158 & n.9 (Tex. Crim. App. 1994).

6

publication) (overruling ineffective-assistance claim and holding defense counsel correctly argued voluntary intoxication to the jury).

## III. JURY CHARGES

In four issues, Mercer argues that the jury charges contained reversible error regarding the placement of his mistake-of-fact defense, the failure to include either a self-defense instruction or a defense-of-property instruction directed to the charges for aggravated assault on a public servant, and the inclusion of a statutory presumption. In our review of the jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *See Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

### A. MISTAKE OF FACT

In each charge, the trial court included an instruction regarding Mercer's alleged mistake of fact—that the deputies were intruders and not police officers:

> You are instructed that it is a defense to prosecution that a person through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense. Although an actor's mistake of fact[5] may constitute a defense to the offense[s] charged, he may nevertheless be convicted of any lesser included offense of which he would be guilty if the fact were as he believed.

---

[5]In the charge directed to the offense against Hernandez, it stated "mistake of law" here instead of "mistake of fact" as was stated in the charges regarding Mouton and Brown. But because Mercer did not complain of this variance either in the trial court or on appeal and because no egregious harm resulted, it affords him no relief. *See Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).

7

A reasonable belief means a belief that would be held by an ordinary and prudent man in the same circumstances as the defendant.

The defendant is not required to prove that he made a mistake of fact. Rather, the State must prove beyond a reasonable doubt that the defendant did not make a mistake of fact.

*See generally* Tex. Penal Code Ann. § 8.02 (West 2011) (providing for defense of mistake of fact); *Anderson v. State*, 11 S.W.3d 369, 372–73 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (in prosecution for aggravated assault of a public servant, holding defendant who denied knowing complainant was a public servant was entitled to instruction on mistake of fact).

Mercer does not complain of the substance of these instructions but of their placement in each charge, which was after the application paragraphs. He avers that because the mistake-of-fact instruction was placed immediately after the trial court instructed the jury to find Mercer guilty of aggravated assault on a public servant if it found he committed each element of the offenses beyond a reasonable doubt, the jury "then and there skipped to the verdict page[s] and entered a finding of guilty" without continuing and considering mistake of fact.[6]

But we may not review these instructions in isolation; instead, we are required to view the charges as a whole. *See Ekern v. State*, 200 S.W.2d 412, 415 (Tex. Crim. App. 1947) ("The court cannot and is not required to charge all

---

[6]Mercer raised this objection at trial, but the trial court overruled it. *See* Tex. Code Crim. Proc. Ann. arts. 36.14 (West 2007), 36.19 (West 2006); Tex. R. App. P. 33.1(a).

the law in each paragraph of his charge, but such charge should be taken and considered as a whole; and an ordinary jury is expected to and surely does take the charge as a whole and considers it as such."). The jury charges here were not erroneous merely because the mistake-of-fact instructions, which Mercer does not argue were substantively in error, were placed later in the charges than Mercer wished. *See Savoy v. State*, No. 14-15-00637-CR, 2016 WL 6809168, at *5 (Tex. App.—Houston [14th Dist.] Nov. 17, 2016, pet. ref'd) (mem. op., not designated for publication); *Smith v. State*, No. 2-05-207-CR, 2006 WL 1791681, at *6 (Tex. App.—Fort Worth June 29, 2006, no pet.) (mem. op., not designated for publication); *Wingo v. State*, 143 S.W.3d 178, 190 (Tex. App.—San Antonio 2004), *aff'd on other grounds*, 189 S.W.3d 270 (Tex. Crim. App. 2006); *Alvarado v. State*, 821 S.W.2d 369, 374 (Tex. App.—Corpus Christi 1991, no pet.). And we cannot accept Mercer's invitation to assume that the jury did not consider the charges in their entirety, which the trial court had read to the jury in toto before deliberations. *Cf. Martin v. State*, 335 S.W.3d 867, 874 (Tex. App.—Austin 2011, pet. ref'd) ("We must assume that the jurors read and understood the charge as a whole . . . ."); *Atkinson v. State*, 107 S.W.3d 856, 859–60 (Tex. App.—Dallas 2003, no pet.) ("Without evidence to the contrary, we may assume the jury was not confused or misled by the charge . . . ."). We overrule issue one.

9

## B. JUSTIFICATION DEFENSES

### 1. Self-Defense

In his second issue, Mercer contends that it was error for the trial court to not include a self-defense instruction directed to the offenses of aggravated assault on a public servant even though the defensive instruction was given regarding the lesser-included offenses of aggravated assault. At trial, Mercer's defensive theory was that he believed the officers were intruders, rendering his use of force reasonable to protect himself. Mercer requested self-defense instructions as applied to the charges of aggravated assault on a public servant. Each jury charge contained a self-defense instruction, but only as applied to the lesser-included offense of aggravated assault.

A defendant is entitled to an instruction on any defense only if some evidence is submitted supporting the defense. *See* Tex. Penal Code Ann. § 2.03(c) (West 2011); *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007). Self-defense is a justification defense that arises only when "the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct."[7] *Shaw*, 243 S.W.3d at 659; *see* Tex. Penal Code Ann. §§ 9.02, 9.31(a) (West 2011); *Ex parte Nailor*, 149 S.W.3d 125,

---

[7]Justification defenses, which fall under Chapter 9 of the penal code, are also referred to as confession-and-avoidance defenses. *See Shaw*, 243 S.W.3d at 659; *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999).

10

132–34 (Tex. Crim. App. 2004). Stated another way, a defendant must first admit that he committed the offense, offering self-defense as a justification, to be entitled to a self-defense instruction. *See Rollins v. State*, No. 01-14-00768-CR, 2016 WL 635218, at *7 (Tex. App.—Houston [1st Dist.] Feb. 11, 2016, no pet.) (mem. op., not designated for publication) (citing *Nailor*, 149 S.W.3d at 133).

Mercer admitted to pointing a deadly weapon at Mouton, Brown, and Hernandez, but denied knowing that they were public servants. In sum, he admitted to committing aggravated assault but denied committing aggravated assault of a public servant. By failing to admit to an essential element of the offense—committing aggravated assault "when he knows the person assaulted is a public servant while the public servant is lawfully discharging an official duty"— Mercer "did not pass the threshold of admission that requires a court to provide a self-defense instruction to the offense of aggravated assault of a public servant." Tex. Penal Code Ann. § 22.02(b)(2)(B); *Isaacson v. State*, No. 03-10-00866-CR, 2013 WL 1955799, at *3 (Tex. App.—Austin May 10, 2013, pet. ref'd) (mem. op., not designated for publication); *see Housden v. State*, No. 2-03-380-CR, 2004 WL 2008632, at *3 (Tex. App.—Fort Worth Sept. 9, 2004, pet. ref'd); *cf. Rodriquez v. State*, 544 S.W.2d 382, 384 (Tex. Crim. App. 1976) (holding defendant charged with assault on a police officer entitled to self-defense instruction and delineating facts admitted by defendant, including his knowledge that complainant was police officer).

Additionally, because the officers were executing a warrant at the time they entered the apartment, Mercer would be entitled to a self-defense instruction only if there was evidence that his use of force was justified based on the officers' use of greater force than necessary in executing the warrant. *See* Tex. Penal Code Ann. § 9.31(b)–(c); *Shadden v. State*, No. 07-10-0331-CR, 2012 WL 1820643, at *2 (Tex. App.—Amarillo May 18, 2012, no pet.) (mem. op., not designated for publication); *Evans v. State*, 876 S.W.2d 459, 464–65 (Tex. App.—Texarkana 1994, no pet.). There was no evidence of excessive force by the officers, and Mercer does not argue that there was; thus, Mercer was not entitled to an instruction on this defense regarding aggravated assault on a public servant. *See Evans*, 876 S.W.2d at 464–65; *Letson v. State*, 805 S.W.2d 801, 804–05 (Tex. App.—Houston [14th Dist.] 1990, no pet.). We overrule issue two.

## 2. Defense of Property

Similar to his second issue, Mercer argues in his third issue that he was entitled to a jury instruction on defense of property as applied to aggravated assault on a public servant, not only as applied to the lesser-included offense of aggravated assault. Mercer requested defense-of-property instructions as applied to the offenses of aggravated assault on a public servant, but the charges included the instruction only as applied to aggravated assault.

Protection of one's own property also is a justification defense, requiring a defendant to admit to committing the alleged conduct to be entitled to an instruction. *See* Tex. Penal Code Ann. §§ 9.02, 9.41(a) (West 2011); *Thompson*

12

*v. State*, 445 S.W.3d 408, 411–12 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). Again, Mercer did not admit to every essential element of the offense of aggravated assault on a public servant, admitting only that he committed aggravated assault. Thus, he was not entitled to an instruction on that defense as applied to aggravated assault on a public servant in the jury charges. *See Sinor v. State*, No. 07-13-00223-CR, 2014 WL 2810413, at *2–3 (Tex. App.—Amarillo June 13, 2014, no pet.) (mem. op., not designated for publication). We overrule issue three.

### C. PRESUMPTION

In his fifth issue, Mercer argues that the trial court's instruction on the public-servant presumption violated his federal due-process rights. *See* U.S. Const. amend. XIV. In each charge, the trial court informed the jury that Mercer was "presumed to have known the person assaulted was a public servant if he was wearing a distinctive uniform or badge indicating his employment as a public servant." *See* Tex. Penal Code Ann. § 22.02(c). The trial court also instructed the jury how to apply the presumption in the context of the State's burden of proof as required by statute. *See id.* § 2.05(a)(2) (West 2011). Mercer argues that although this permissive presumption is authorized under the penal code and would be constitutional "in a typical case," it was unconstitutional as applied to him based on the admitted evidence: "There was a substantial question as to whether [Mercer] could see the officers, and the time frame in which the alleged assault occurred lasted only a few seconds." In sum, Mercer asserts that the

13

presumption was unconstitutionally applied to him because no rational trier of fact could make the connection permitted by the presumption.

The presumption provided for in section 22.02(c) is permissive when accompanied by the instructions mandated by section 2.05(a)(2), explaining for the jury how to apply the presumption in light of the State's burden of proof. *See Willis v. State*, 790 S.W.2d 307, 309–10 (Tex. Crim. App. 1990); *State v. Lewis*, 151 S.W.3d 213, 223 (Tex. App.—Tyler 2004, pet. ref'd) (op. on reh'g). As a permissive presumption, it does not relieve the State of its burden to prove guilt beyond a reasonable doubt. *See Willis*, 790 S.W.2d at 310. A permissive presumption will generally be held constitutional if we determine that a rational trier of fact could make the connection permitted by the presumption. *See Cty. Ct. of Ulster v. Allen*, 442 U.S. 140, 156 (1979); *Willis*, 790 S.W.2d at 310.

The trial court's instructions to the jury regarding the statutory presumption allowed the jury to accept or reject the inference and did not shift the burden of proof to Mercer. Although Mercer proffered some evidence at trial that he could not see what the officers were wearing because of the light coming in through the door into his darkened apartment, there was certainly evidence from which a rational fact-finder could find that Mercer had the opportunity to see that the intruders were uniformed peace officers. We cannot conclude that this connection was irrational. Thus, the instructions on the permissive presumption were constitutional as applied to Mercer. *See, e.g.*, *Marioneaux v. State*, No. 03-99-00515-CR, 2000 WL 1028101, at *2–3 (Tex. App.—Austin July 27, 2000, pet.

14

ref'd) (not designated for publication); *Ventura-Salmeron v. State*, No. 03-98-00470-CR, 2000 WL 140906, at *6 (Tex. App.—Austin Feb. 3, 2000, pet. ref'd) (not designated for publication).  We overrule issue five.

## IV.  CONCLUSION

Having overruled Mercer's issues, we affirm the trial court's judgments. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 26, 2017