Sidney BELLAMY, Appellant,

v.

The STATE of Texas, Appellee.

No. 1082–85.

Court of Criminal Appeals of Texas, En Banc.

Dec. 16, 1987.

Susan Larsen, El Paso, for appellant.

Herbert B. Hancock, Dist. Atty. and Martha J. Sullivan, Asst. Dist. Atty., Nacogdoches, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was indicted for the offense of theft. The indictment alleged that on or about February 28, 1981 he "acquired" "26 sterling silver spoons and 8 sterling silver knives, of the value of more than two hundred dollars and less than ten thousand dollars," "knowing that it was property stolen from another[.]" V.T.C.A. Penal Code, § 31.03(b). After finding appellant guilty, the jury assessed punishment at five years, probated, and a fine of $5,000.00.

Among appellant's contentions on appeal was a Fourteenth Amendment due process challenge to the presumption provided for by V.T.C.A. Penal Code, § 31.03(c)(3) and (4).[1] Appellant alleged that the jury charge given pursuant to this provision, as mandated by V.T.C.A. Penal Code, § 2.05,[2] "allowed an impermissible shifting of the burden of proof from the State by raising a conclusive and arbitrary presumption." The Tyler Court of Appeals disagreed, and

affirmed appellant's conviction in a published opinion. *Bellamy v. State*, (Tex.App.—Tyler, No. 12–82–0052–CR, delivered August 29, 1985). We granted appellant's petition for discretionary review to address his renewed claim that § 31.03(c)(3), supra, is unconstitutional under the Fourteenth Amendment. See Tex.R.App.Pro., Rule 200(c)(4).

I.

Sometime in the latter part of February, 1981, the home of Mr. and Mrs. J.R. Robie Lee was burglarized by three young men, Billy Ebarb, Curtis Robinson and Darryl Hodney. The silverware alleged in the indictment to have been acquired by appellant was taken during this burglary.

Appellant was a professor at Stephen F. Austin State University, and also, as the court of appeals depicted him, "a trader and dealer in secondhand personal property." On April 2, 1981, a number of peace officers from various state and local law enforcement entities executed a warrant to search appellant's home in Nacogdoches,

---

1. These provisions read:
   "(3) [A]n actor engaged in the business of buying and selling used or secondhand personal property, or lending money on the security of personal property deposited with him, is presumed to know upon receipt by the actor of stolen property (other than a motor vehicle subject to Article 6687–1, Vernon's Texas Civil Statutes) that the property has been previously stolen from another if the actor pays for or loans against the property $25 or more (or consideration of equivalent value) and the actor knowingly or recklessly:
   (A) fails to record the name, address, and physical description or identification number of the seller or pledgor;
   (B) fails to record a complete description of the property, including the serial number, if reasonably available, or other identifying characteristics; or
   (C) fails to obtain a signed warranty from the seller or pledgor that the seller or pledgor has the right to possess the property. It is the express intent of this provision that the presumption arises unless the actor complies with each of the numbered requirements;
   (4) for the purposes of Subdivision (3)(A) of this subsection, 'identification number' means driver's license number, military identification number, identification certificate, or other official number capable of identifying an individual."

2. § 2.05, supra, reads in its entirety:
   "When this code or another penal law establishes a presumption with respect to any fact, it has the following consequences:
   (1) if there is sufficient evidence of the facts that give rise to the presumption, the issue of the existence of the presumed fact must be submitted to the jury, unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact; and
   (2) if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies as follows:
   (A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;
   (B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;
   (C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and
   (D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose."

looking for what Deputy Sheriff H.R. McDaniel described as "silverware, jewelry."[3] They found and seized from the kitchen and "shop" areas of the house literally hundreds, perhaps thousands of items of secondhand personal property, including rings, watches, silver and silverware, and divers jewelry. Aside from the silverware alleged in the indictment, and "several" rings and necklaces, however, none of these items was shown to be stolen, and all were eventually returned to appellant. No records of who sold him any of the property were found on the premises—indeed, appellant effectively testified he did not systematically keep any such records.

Pursuant to an agreement with the State not made entirely clear by the record, Billy Ebarb testified against appellant. According to Ebarb's account, he first went to appellant's house sometime before Christmas in 1980 in response to a newspaper ad appellant had placed indicating he "bought gold and silver[.]" Ebarb sold appellant "a few rings" at that time, none of which was stolen. Appellant advised Ebarb that "whenever [he] got anything just bring them on out[,]" and "[d]on't never worry about nothing." On a second occasion Ebarb took "some rings and a couple of necklaces" to appellant, this time stolen. By Christmas of 1980 Ebarb had been to appellant's house at least fifteen times, to sell him "[g]old rings, silver, gold necklaces, silverware," all of which came from burglaries committed by Ebarb, Robinson and Hodney, numbering "in the hundreds."[4] Appellant always paid in cash, never gave Ebarb a receipt, and never asked for or recorded any form of identification. Though Ebarb never indicated where the property was coming from, appellant at one point remarked, "I know you ain't getting this off the streets." On another occasion appellant told Ebarb "if

[Ebarb] got picked up and arrested for burglary, don't say nothing about [appellant], if anything ... ever came down about him why he was getting rid of it and he wouldn't say where he got it from." For the Lees' silverware and "a few rings," appellant paid Ebarb "about $450.00 or a little more."

Following a cavalcade of defense witnesses, twenty seven in all, attesting to his good reputation in the community for being honest, truthful and lawabiding, appellant took the stand in his own behalf. He testified that he was a trader in jewelry and that he bought up gold and silver as an investment. Ebarb appeared at his house three or four times before the day appellant bought the silverware. The first occasion was in August of 1980, when appellant bought a class ring Ebarb said was his sister's. On a second occasion, in late December or January, appellant bought a few "small items" from Ebarb, and on another occasion Ebarb simply appeared and asked for a loan, which appellant refused. Appellant admitted buying one ring from Ebarb that was shown to be stolen, but denied having bought two to three hundred. He flatly denied having made the statements attributed to him by Ebarb.

Obviously the key point of contention at trial was whether appellant knew the silverware was stolen when he acquired it. Apart from Ebarb's testimony, relevant circumstances which militate in favor of the inference that appellant did know include: that a young man of Ebarb's age (17) and youthful appearance would have possession of fine silver to sell; that officers executing the search warrant observed equipment for melting down gold and silver in appellant's shop; and that appellant admittedly taught Ebarb several methods of identifying grades of gold and silver, and gave him tools for determining the authen-

---

**3.** Although not admitted in evidence at the trial on the merits, neither the search warrant nor its supporting affidavit, admitted during a pretrial motion to suppress hearing, makes any mention whatsoever of jewelry—only silverware, including those items subsequently alleged in the indictment.

**4.** At one point Ebarb testified he had sold appellant "a little more than two hundred rings." However, only three rings found in appellant's house were positively shown to have been taken in other burglaries, and of these Ebarb was able to remember only one. He also testified that what was taken in the February burglary of the Lees' residence was the only silverware he ever sold appellant.

ticity of diamonds. Circumstances militating against the inference that appellant knew include: that such a minute portion of the property found in appellant's house ultimately proved stolen; that appellant cooperated fully with officers executing the warrant; and that the State's own expert testified that at the time appellant bought the silverware from Ebarb, the price he paid was reasonable, and not "ridiculously low," at least "[b]ased entirely on the fine silver content."

At the conclusion of the evidence the trial court charged the jury on the presumption contained in § 31.03(c)(3), supra, as follows:

> "You are further instructed that a Defendant engaged in the business of buying and selling used or secondhand personal property is presumed to know upon receipt by the Defendant of property, other than a motor vehicle, that the property has been previously stolen from another person, if the Defendant pays $25.00 or more for the property and the Defendant knowingly or recklessly fails to do each of the following:
>
> "(i) fails to record the names, address, and physical description or identification number of the seller or pledgor;
>
> "(ii) fails to record a complete description of the property, including the serial number, if reasonably available, or other identifying characteristics; or
>
> "(iii) fails to obtain a signed warranty from the seller or pledgor that the seller or pledgor had the right to possess the property.
>
> "Identification number used in subparagraph one above means drivers license, military identification number, identification certificate, or other official number capable of identifying an individual.
>
> "However, before such presumption may be indulged by the jury, it must find from the evidence beyond a reasonable doubt, that the property was stolen from another person and then, if such is estab-

lished beyond a reasonable doubt, the jury may find that the Defendant knew the property was stolen from another person. It is the exculuive [sic] province of the jury to determine whether the facts and circumstances shown by the evidence in the case warrants [sic] such presumption, but the jury is not bound to so find. And even if the jury so finds that the Defendant knew said property was stolen at the time of the receipt of same, as alleged in the indictment, the State must prove beyond a reasonable doubt each of the other elements of the offense set out in the indictment and recited herein ...

> "If you have a reasonable doubt as to whether the Defendant, at the time he received the property knew said property was stolen from another person at the time he received said property, as alleged in the indictment, or any other element of the alleged offense as set forth in the indictment and recited herein ..., then you will acquit the Defendant, Sidney Bellamy, and say 'not guilty.' " [5]

Appellant did not object to this or any other portion of the court's charge.

During opening final argument the prosecutor acknowledged that "almost the whole point of dispute in this matter, goes down to [appellant's] intent." She then reviewed the above portion of the court's charge, and commented:

> "... So, what you have here, ladies and gentleman, is a presumption. It is not binding upon the jury, but it is placed in our law. I would submit for a reason. That is, to put a burden on people who buy and sell merchandise, secondhand merchandise."

The prosecutor went on to argue other circumstances probative of appellant's knowledge, and only once more alluded to the presumption, and then very briefly, in rebuttal.

---

**5.** We note that, contrary to the mandate of § 2.05(2)(A), supra, this charge failed to require the jury to find beyond a reasonable doubt the existence of the predicate fact (failure to keep the requisite records) before authorizing a ver-

dict on the basis of the presumption. See note 11, *post.* Appellant has not raised this defect *per se,* however, and we will not address it *sua sponte* here.

In the court of appeals appellant relied principally upon *County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), to argue that the presumption in § 31.03(c)(3), supra, was unconstitutional in that "[a]ctual knowledge that property was stolen has no rational connection to recording data about its seller." In response, the court of appeals merely observed:

"There is a rational connection between a used-goods dealer's knowledge that the property is stolen and his failure to record the name, address, and physical description of the person from whom he is buying the goods or his failure to determine whether the seller has lawful possession of the property. Therefore, the presumed fact is more likely than not to flow from the proved fact on which it depends."

With this, the court of appeals found the statutory presumption constitutional "as applied in this case."

## II.

■■■ In *County Court of Ulster County, New York v. Allen,* supra, the Supreme Court decided for the first time that the analytical approach to determining constitutionality of a statutory presumption depends on the type of presumption created—whether "mandatory" or "permissive." "Mandatory" presumptions either require the factfinder to find an elemental fact upon proof of a predicate fact (i.e., a "conclusive" presumption), or require the accused to disprove the elemental fact once the predicate fact has been shown by the State (i.e., a "rebuttable" presumption). *Ulster* observed that a statute creating a mandatory presumption should be tested "on its face," to determine "the presumption's accuracy in the run of cases." 442

U.S. 159, 99 S.Ct. 2226, 60 L.Ed.2d 793. In practice, however, the Supreme Court since *Ulster* has yet to perform what it there characterized as a "facial" analysis. Instead, finding a jury charge to contain what a reasonable jury could construe to be either a "conclusive" or "rebuttable" presumption, the Supreme Court has invalidated that charge without even inquiring into the tendency of the predicate fact to give rise to an inference as to the elemental fact. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). Because such presumptions effectively eliminate the State's burden of proof of the elemental fact, or shift the burden on the accused to disprove the elemental fact, respectively, they are deemed to be unconstitutional.[6]

■ A "permissive" presumption, on the other hand, invites but does not compel the factfinder to rely upon a predicate fact to establish the elemental fact. All presumptions in Texas are to be construed as permissive, at least so long as the language of § 2.05, supra, is adequately incorporated in the jury charge. Cf. *Jones v. State,* 658 S.W.2d 594 (Tex.Cr.App.1983) (Jury charge under § 31.03(c)(3), "without the limitations of Sec. 2.05, constituted an unconstitutional shifting of the burden of proof[,]" and was therefore fundamentally defective—pre-*Almanza,* of course.) *Ulster* provides that validity of a permissive presumption is to be tested as it applies to the facts of the particular case. That is to say, in applying the standard enunciated in *Leary v. United States,* 395 U.S. 6, at 36, 89 S.Ct. 1532, at 1548, 23 L.Ed.2d 57 (1969), whether "it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend"[7] will be measured on

---

**6.** The Supreme Court has yet to address the validity of presumptions that, upon proof of the predicate fact, shift only the burden of going forward, but not the ultimate burden of persuasion, to the accused. See *Francis v. Franklin,* 471 U.S. at 314, n. 3, 105 S.Ct. at 1971, n. 3, 85 L.Ed.2d at 353, n. 3.

**7.** *Ulster* is really a most peculiar case. It apparently holds that two things are necessary to

render a permissive presumption constitutional. There must first be a "rational connection between the fact proved and the ultimate fact presumed[.]" *Tot v. United States,* 319 U.S. 463, 467, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519 (1943). This is little more than to say, however, that it must be "relevant," that it must have some "tendency to make the existence of [the elemental fact] more probable ... than it would be without the evidence." See Tex.R.Cr.Evid., Rule

the strength of the invited inference as supported *in the record as a whole,* not simply on the strength of the inference arising from the bare predicate fact.[8]

■ Appellant contends first that the presumption set up by the jury charge in this cause was mandatory inasmuch as the instruction began, "... a Defendant ... *is* presumed to know ...,"[9] and nowhere thereafter adequately informed the jury that it was not bound to follow the presumption, even upon proof of the predicate fact, without consideration of all of the evidence bearing upon appellant's guilty knowledge. The court of appeals believed the presumption to be a permissive one, and therefore applied the test of *Ulster.*[10] After close scrutiny of the charge given in this case, however, we find we must sustain appellant's contention.

After instructing the jury of the specific presumption authorized by § 31.03(c)(3), supra, the charge in this cause attempts to comply with the provisions of § 2.05, supra. In several essential aspects, however, this attempt falls short of the mark. First, as we have remarked at note 5 *ante,* the charge fails to require that the jury find the predicate fact of knowingly or recklessly failing to keep the necessary records *beyond a reasonable doubt* before relying on the presumption. Instead, the jury is told it may invoke the presumption should it find simply "that the property was stolen from another person and then, if *such* fact is established beyond a reasonable doubt, the jury may find that [appellant] *knew* the property was stolen from another person." Taken in isolation and quite literally, this instruction authorized the jury to presume the elemental fact of knowledge that the property was stolen from proof of the mere fact that it *was.*[11] Taken in context with the rest of the charge on the presumption, it at least failed to account for the mandate of § 2.05(2)(A) and (D), supra, that the jury be told it must find "the facts giving rise to the presumption" beyond a reasonable doubt, and if it has a reasonable doubt as to those facts, "the presumption fails and the jury shall not consider the presumption for any purpose."

Second, and more critically, after instructing that knowledge "is presumed" where the necessary records have not been

401. Second, the elemental fact must "at least ... more likely than not ... flow from the proved fact...." *Leary v. United States,* supra. Clearly this requires that the predicate fact have more than just the minimal probativeness necessary to render it admissible as "relevant" to establish the elemental fact. How much more than minimally probative the predicate fact must be in order to justify the permissive presumption is far less clear. At any rate, we can say with assurance that the court of appeals was in error in reasoning that simply because the connection between failure to keep records and culpable knowledge was rational, "[t]herefore" the latter fact "more likely than not" followed from the former.

8. *Ulster* appears to mandate that in determining validity of a permissive presumption, the appellate court look not just to the degree to which the predicate fact alone tends to establish the elemental fact, but to the extent that *all* of the facts proved by the State bear out the particular inference the presumption invites the jury to draw. This holding seems anomalous. While a permissive presumption authorizes the jury to find the elemental fact based upon proof of the predicate fact alone, without recourse to what other evidence in the record may be probative of the elemental fact, that other evidence may nevertheless be examined to determine whether the presumption "undermine[s] the factfinder's responsibility at trial ... to find the ultimate facts beyond a reasonable doubt." 442 U.S. at 156, 99 S.Ct. at 2224, 60 L.Ed.2d at 791. Unless it can be said that the predicate fact by itself will support a rational jury's finding of the elemental fact beyond a reasonable doubt, one would think that an instruction authorizing such a finding would violate due process under *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), decided just three weeks after *Ulster.* As Justice Powell observes in his dissenting opinion, the majority's analysis in *Ulster* really amounts to nothing more than application of "an unarticulated harmless-error standard[.]" 442 U.S. at 177, 99 S.Ct. at 2235, 60 L.Ed.2d at 804.

9. All emphasis supplied unless otherwise indicated.

10. But see note 7, *ante.*

11. Under § 31.03(c)(3), supra, the fact giving rise to the presumption is that the accused failed to keep records, not that the property was in fact stolen. If the given charge were literally true, the jury would have been authorized to presume one element of the offense from proof of another!

kept, the charge here never clearly informed the jury that it was free to reject the presumption, even upon proof of the predicate facts. The jury was told it was its "exculuive [sic] province" "to determine *whether* the facts and circumstances shown by the evidence in the case *warrants [sic] such presumption*," but that it is "not bound to *so* find." Although this statement does contain some of the statutory language from § 2.05(2)(B), supra, *viz:* "it is not bound to so find," in context here it is utter nonsense. The meaning that was likely intended by the trial court was that upon reviewing all of the circumstances pertaining to appellant's knowledge, the jury was not constrained to follow the presumption. But as given, the instruction tells the jury, not that it need not find the elemental fact even upon sufficient proof of the predicate facts, as § 2.05(2)(B) plainly contemplates; rather, it tells the jury it is not bound to determine "whether" the facts of the case as a whole "warrant" the presumption. Possibly a reasonable jury could intuit the intended meaning. It is at least equally possible, however, that a reasonable jury would interpret this portion of the charge quite differently. For, logically read, while it instructs the jury that it *may* examine all the facts and circumstances as they bear on appellant's knowledge, in order to determine "whether" they "warrant" the presumption, it does not require the jury to do so. Nor does it inform the jury of its options should it find that the record does *not* in fact "warrant" the presumption. Quite simply, the instruction fails to alert the jury that it is free to reject the presumption should it find that the circumstances presented by the State's case as a whole impugn the inference the presumption authorizes it to convict upon, or for that matter, that it is free to reject the presumption for any reason at all. Because of this lack of clarity in the qualifying instructions, a reasonable jury could well have found the presumption here to be mandatory. Therefore, as least as it was presented to the jury in this cause, the presumption deriving from § 31.03(c)(3), supra, is constitutionally defective. *Sandstrom v. Montana,* supra; *Franklin v. Francis,* supra.[12]

■ Moreover, even if we agreed with the court of appeals' conclusion that the presumption here was permissive, we must reject that court's conclusion that it was valid under *Ulster.* For we conclude that "as applied" to appellant, the particular dealer of secondhand personal property in this case, failure to keep the records required by § 31.03(c)(3), supra, does not "more likely than not" lead to the conclusion he knew the silverware he obtained from Ebarb was stolen.

It is undoubtedly true that there is a rational connection between receiving stolen property and failure to record the circumstances of its receipt where the recipient would otherwise be expected to record the transaction in the ordinary course of his business. A fence is not likely voluntarily to keep memoranda evincing his guilty conduct. Therefore, evidence that appellant failed to obtain and record information such as that which § 31.03(c)(3), supra, designates would certainly be relevant, and hence admissible, *tending* to show appellant was aware he was dealing in stolen goods. See note 7, *ante.* Less compelling is the general proposition that a dealer in secondhand property, simply because he "knowingly" (much less "recklessly") fails to make a record of the transaction, is probably a fence. As the recordation requirement becomes more stringent, the inference actually becomes more attenuated. Common experience does not indicate "with substantial assurance" that the dealer who fails to record identifying characteristics about the seller in a particular transaction, fails to record identifying numbers or characteristics of the particular property, *or*[13] fails to obtain "a signed

---

**12.** We do not thereby hold that the presumption in § 31.03(c)(3), supra, is mandatory *per se,* but only that it could have been construed so by a reasonable jury given the faulty instruction presented in this case.

**13.** § 31.03(c)(3)(C), supra, expressly provides that "the presumption arises unless the actor complies with each of the numbered requirements."

warranty" guaranteeing the seller's right to possess the property he sells, can be said "more likely than not" to know the particular property he bought was stolen.[14] *Leary v. United States*, supra. But that is a "facial" analysis. Because we have assumed, *arguendo*, that the presumption here is permissive, under *Ulster* we must inquire whether the record in this particular case transforms what is concededly a "rational connection" into an inference that "more likely than not" is accurate as applied to appellant. We hold that it does not.

Nothing in the facts as we have recited them *ante* tends to shore up the particular inference that because this appellant failed to record the information enumerated in § 31.03(c)(3), supra, he must have known the silverware in issue here was stolen. If anything, the record seems to cut against it. The State's own witnesses testified, albeit on crossexamination, that hundreds of items of secondhand personal property were seized from appellant's home. No records were found as to any of these items. Of the hundreds of rings, watches and other valuables found, only two rings were positively shown to be stolen, though as many as 75 private citizens were called in to try to identify them. From all the facts and circumstances it would appear that, as to appellant, failure to record the data required by the statute was not at all an indicator that, more likely than not, he knew that any given item he may have bought had been unlawfully acquired. Therefore we conclude that even under the test announced in *Ulster* the presumption contained in § 31.03(c)(3), supra, was unconstitutional as applied to appellant.

### III.

Had appellant objected to authorizing the jury to apply the unconstitutional presump-

tion in this cause, we would proceed to conduct a harm analysis in keeping with the recent pronouncement of the Supreme Court in *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). Accordingly, we would be constrained to reverse appellant's conviction unless we could find that charging on the presumption was harmless beyond a reasonable doubt. Because appellant did not object to the charge, however, we cannot reverse the conviction absent a finding "the error is so egregious and created such harm that [appellant] 'has not had a fair and impartial trial.'" *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Cr.Ap.1985); Article 36.19, V.A.C.C.P. We must assay:

> "... the actual degree of harm ... in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."

686 S.W.2d at 171.

■ That the error was egregious in this case is manifest. At worst the State was relieved altogether of the burden of showing appellant knew the property he received was stolen, once it was shown he did not record the specific information called for by § 31.03(c)(3), supra. At best the jury was authorized to find the State had met its burden upon proof of predicate facts that, even as applied to the circumstances of the case, do not more likely than not establish guilty knowledge. Due process is offended in either event.

Examination of the trial record as a whole convinces us, furthermore, that this egregious error operated to deprive appellant of a fair and impartial trial. Whether

---

14. Whether a pawnbroker who fails to keep such records "more likely than not" knows that property he buys is stolen is a separate, and closer question—one that we need not decide today. At least in that context, however, a specific statutory provision exists independently of § 31.03(c), supra, which requires recordation of, *inter alia*, "[t]he name and address of the pledgor and pledgor's description or the distinctive number from pledgor's driver's license or

military identification;" and "[a]n identification and description of pledged goods, including serial numbers if reasonably available[.]" Texas Pawnshop Act, Art. 5069–51.10(b) and (d), V.T. C.S. Even this provision, however, does not require the pawnbroker to take from his pledgor "a signed warranty ... that the ... pledgor has the right to possess the property." § 31.03(c)(3)(C), supra.

appellant knew the property he received was stolen was not just one of many contested issues at trial, it was the sole contested issue. Appellant himself essentially admitted every other element of the offense by his own testimony. No doubt in a sufficiency analysis, viewing the evidence in the light most favorable to the verdict, we would find a rational basis to sustain a jury finding that appellant knew the property was stolen, even excluding from consideration the facts giving rise to the presumption. This is a far cry from the conclusion, however, that any given jury would necessarily reject appellant's version of events in favor of Ebarb's, especially when testimony of appellant's many reputation witnesses is considered against Ebarb's apparent self interest. As was noted earlier, there are significant circumstances pointing either way on the question of appellant's knowledge. While it is true that the prosecutor did not devote an inordinate portion of her final argument to the presumption, she did reread it and commend its use to the jury. It cannot be said with any confidence on the state of this record that appellant's jury could not reasonably have harbored some uncertainty on the issue of guilty knowledge. The jury might well have chosen to resolve that uncertainty by ignoring whatever conflict it otherwise perceived in the evidence pertaining to appellant's knowledge, and simply relying on the undisputed fact that he failed to record the statutory information when he acquired the property. Thus may this appellant have been deprived of his right to have a jury meaningfully determine the sole contested issue at his trial.

Therefore, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for new trial.

WHITE, J., concurs in the result.

ONION, P.J., and DAVIS, J., dissent.

MILLER, Judge, concurring.

I join the majority opinion, writing only to point out that the court's charge in this case did not contain an instruction mandated by V.T.C.A., Penal Code, § 2.05. Thus, in my view, the court's charge in the instant case instructed the jury that the presumption at bar was mandatory. See *Bellamy v. State* (Tex.Cr.App.1987), slip op. at 11–13.

The majority opinion faults the court's presumption charge because it "never clearly informed the jury that it was free to reject the presumption". *Id.*, slip op. at 12. Conceding for a moment that the Sec. 31.-03(c)(3) V.A.P.C. presumption as worded falls somewhere between confusing and "utter nonsense", *id.*, I find that the clear mandate of § 2.05, supra, that:

> "the court shall charge the jury, in terms of the *presumption* and the *specific element* to which it applies" (emphasis supplied).

was virtually totally ignored by the trial judge.

It is important to note that nowhere in the charge, except in that portion quoted by the majority, is the statutory presumption provided for in Sec. 2.05, supra, alluded to. Even a form instruction containing § 2.05 as written in the Penal Code is absent.[1] The presence of such a form instruction may not alone save a charge that is otherwise mandatory in its wording, but would have been an important factor to consider when, as here, a confusing and arguably ambiguous (taken as a whole) presumption charge is submitted to the jury.

TEAGUE, and CAMPBELL, JJ., join.

---

1. Such an instruction does not comply with the above quoted mandate of § 2.05, but it would be better than nothing.