OPINION

No. 04-05-00199-CR

Joe NARANJO a/k/a Sammy Naranjo, 

Appellant

v.

The STATE of Texas ,

Appellee

From the 186th Judicial District Court, Bexar County, Texas

Trial Court No. 2003-CR-5303

Honorable Maria Teresa Herr , Judge Presiding




REVISED OPINION ON APPELLANT'S MOTION FOR REHEARING




Opinion by: Sarah B. Duncan , Justice



Sitting: Sarah B. Duncan , Justice

 Karen Angelini , Justice

 Phylis J. Speedlin , Justice 



Delivered and Filed: October 11, 2006



REVERSED AND REMANDED

 We deny the State's motion for rehearing. However, we withdraw our August 30, 2006 opinion and substitute this opinion
in its place. Our judgment remains unchanged.

 Joe Naranjo a/k/a Sammy Naranjo appeals the trial court's judgment convicting him of theft by appropriating a trailer he
knew was stolen and sentencing him to two years in prison, probated. We hold the trial court erred in instructing the jury on
the presumption of knowledge contained in section 31.03(c)(6) of the Texas Penal Code; but the evidence is legally
sufficient to support a finding that Naranjo had actual subjective knowledge at the time he acquired the trailer that it was
stolen. We therefore reverse the trial court's judgment and remand the cause for a new trial.

Factual and Procedural Background


 In July 2002, San Antonio Police Detective Dan Sevino conducted a "salvage" inspection of Perfection Collision Center,
the premises of which housed both an automobile body shop and Bad Boys Audio. Sevino characterized the body shop as a
"family business" involving three brothers - Rudy (the owner), Jesse (the brother in charge), and Joe Naranjo (an employee).

 Sevino first encountered Jesse, who seemed "fine" with the inspection. But when Sevino started towards the back of the
shop to inspect the vehicles, Rudy immediately tried to close the business and force the officers to leave the premises. In
Sevino's experience, this generally occurs when "there is something there they don't want us to find." Because "Rudy ... was
becoming a little bit out of control" and because the number of vehicles in the shop was beyond Sevino's expectation, he
called for additional officers and continued the investigation.

 Initially, Sevino found a custom-painted and stereo/CD equipped jet ski that had had its exterior identification number
removed. When Sevino explained that he would have to disassemble part of the jet ski to get to the secondary identification
number, Rudy again became upset. Ultimately, Sevino got to the secondary identification number; and Rudy provided title
to the jet ski. However, as Sevino moved down the line of vehicles, he came across a trailer whose identification number
had been ground down and painted over. When Sevino questioned Rudy, he said the trailer belonged to his brother Joe. Joe
Naranjo admitted the trailer was his but was unable to produce a title. When asked how he acquired the trailer, Joe claimed
he had purchased the trailer more than two years before the inspection for $1400 from an unknown individual at a mud race.
In stark contrast to Rudy's reaction when told the jet ski would be impounded if he did not produce a title, when Sevino told
Joe that he was going to impound the trailer, Joe did not react at all. That struck Sevino as very unusual.

 Sevino impounded the trailer and several days later chemically raised the identification numbers and traced the trailer back
to its original owner, William Weeby, who had reported the trailer stolen approximately one year earlier. Weeby further
identified the trailer as his by some damage to the rear end, which Sevino found on the impounded trailer in a subsequent
inspection, and by a yellow pin stripe, which Sevino also found on the impounded trailer after applying some paint remover.
Weeby later inspected the impounded trailer, identified it as his stolen trailer, and provided the title. Thereafter, Sevino
advised Joe Naranjo in a telephone call that it appeared the trailer was in fact stolen and asked Joe to come in and give a
more detailed statement regarding his purchase of the trailer. When Naranjo refused to answer any questions or otherwise
cooperate with the investigation, Sevino scheduled a seizure hearing and notified both Weeby and Naranjo by certified mail,
return receipt requested. Only Sevino and Weeby attended. As a result of the hearing, Weeby was awarded possession of the
trailer. Naranjo was charged with theft of the trailer by appropriation, the elements of which are: "(1) a person, (2) with the
intent to deprive the owner of property, (3) appropriates property, (4) which is stolen property, (5) knowing it was stolen,
(6) by another."Franklin v. State, 659 S.W.2d 831, 833 (Tex. Crim. App. 1983) (citing Dennis v. State, 647 S.W.2d 275
(Tex. Crim. App. 1983)); see Tex. Pen. Code Ann. §§ 31.03(a)-(b)(1)-(2) (Vernon Supp. 2006).

 At trial, it was undisputed that Naranjo was in possession of a stolen trailer. The only disputed issue was whether he knew
when he acquired the trailer that it had been stolen by another. As a general rule, to prove a defendant knew he possessed
stolen property, the State must prove not just "knowledge that would have indicated to a reasonably prudent man that the
property was stolen" but "actual subjective knowledge." Dennis, 647 S.W.2d at 280. However, this element of the offense
may be established with the presumption of knowledge contained in Texas Penal Code section 31.03(c)(6)(B), which
provides in relevant part as follows:

 (6) an actor engaged in the business of obtaining abandoned or wrecked motor vehicles or parts of an abandoned or
wrecked motor vehicle for resale, disposal, scrap, repair, rebuilding, demolition, or other form of salvage is presumed to
know on receipt by the actor of stolen property that the property has been previously stolen from another if the actor
knowingly or recklessly:



 ...



 (B) fails on receipt of a motor vehicle to obtain a certificate of authority, sales receipt, or transfer document as required by
Chapter 683, Transportation Code, or a certificate of title showing that the motor vehicle is not subject to a lien or that all
recorded liens on the motor vehicle have been released ....



Tex. Pen. Code Ann. § 31.03(c)(6)(B) (Vernon Supp. 2006). But the jury may be instructed on "the issue of the existence of
the presumed fact" only "if there is sufficient evidence of the facts that give rise to the presumption." Id. at § 2.05(a)(1). If
this evidentiary threshold is met and "the existence of the presumed fact is submitted to the jury," the jury must also be
instructed, inter alia,"that the facts giving rise to the presumption must be proven beyond a reasonable doubt." Id. at
§ 2.05(a)(2)(A).

 At trial, there was no evidence that, when Naranjo purchased the trailer, he obtained "a certificate of authority, sales
receipt, or transfer document ..., or a certificate of title." The trial court's charge assumed the availability of the section
31.03(c)(6)(B) presumption and instructed the jury as follows:

 Now, if you find from the evidence beyond a reasonable doubt that on or about the 30th day of July, A.D., 2002, in Bexar
County, Texas, the defendant, Joe Naranjo, with intent to deprive the owner of property, did unlawfully appropriate stolen
property, to-wit: one (1) trailer, by acquiring or otherwise exercising control over said property, ..., the said property having
been stolen from William [Weeby], its lawful owner; and Joe Naranjo acquired said property by means unknown to the
grand jurors, knowing that it was stolen by another, then you will find the defendant guilty of theft, as charged in the indictment.



 If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty.



 You are instructed that appropriation of property is unlawful if it is without the owner[']s effective consent, or if the
property is stolen and the actor appropriates the property knowing it was stolen by another. An actor engaged in the business
of obtaining abandoned or wrecked motor vehicles or parts of an abandoned or wrecked motor vehicle for resale, disposal,
scrap, repair, rebuilding, demolition, or other form of salvage is presumed to know on receipt by the actor of stolen property
that the property has been previously stolen from another if the actor knowingly or recklessly fails on receipt of a motor
vehicle to obtain a certificate of authority, sales receipt, or a certificate of title showing that the motor vehicle is not subject
to a lien or that all recorded liens on the motor vehicle had been released.



 ....



 Therefore, if you believe from the evidence beyond a reasonable doubt that Joe Naranjo knowingly or recklessly failed, on
receipt of the motor vehicle in question, to obtain a certificate of authority, sales receipt, or failed to obtain a certificate of
title showing that the motor vehicle in question was not subject to a lien or that all recorded liens on the motor vehicle had
been released, it is presumed, and you may find, [] that Joe Naranjo knew on receipt of the property that the property had
been previously stolen from another. However, you are not bound to so find and even if you do the State must still prove
beyond a reasonable doubt each and all of this and the other elements of the offense charged.



 If you have a reasonable doubt [] that Joe Naranjo knowingly or recklessly failed, on receipt of the motor vehicle in
question, to obtain a certificate of authority, sales receipt, or failed to obtain a certificate of title showing that the motor
vehicle in question was not subject to a lien or that all recorded liens on the motor vehicle have been released, the
presumption that Joe Naranjo knew on receipt of the property that the property had been previously stolen from another
fails, and you are not to consider the presumption for any purpose.



The jury found Naranjo guilty; and the trial court convicted him of theft by appropriation and sentenced him to two years in
prison, probated.

 On appeal Naranjo argues (1) without the section 31.03(c)(6)(B) presumption, the evidence is legally insufficient to
establish that he had actual subjective knowledge when he acquired the trailer that it was stolen by another; (2) the trial
court erred in instructing the jury on the section 31.03(c)(6)(B) presumption because neither Perfection Collision nor
Naranjo is subject to its record-keeping requirements; and (3) the trial court's section 31.03(c)(6)(B) instruction was
erroneous because it failed to inform the jury that it was required to find the evidentiary fact (Naranjo was "an actor engaged
in the business of obtaining abandoned or wrecked motor vehicles or parts of an abandoned or wrecked motor vehicle for
resale, disposal, scrap, repair, rebuilding, demolition, or other form of salvage") beyond a reasonable doubt before it was
authorized to presume the elemental fact (Naranjo had actual subjective knowledge when he acquired the trailer that it was
stolen). Because resolution of Naranjo's legal sufficiency complaint requires that we first determine whether a
hypothetically-correct charge would have included the section 31.03(c)(6)(B) presumption, we consider his charge issues
first. See Curry v. State, 30 S.W.3d 394 (Tex. Crim. App. 2000).

Applicability of the Presumption


 Naranjo argues the trial court erred in instructing the jury on the section 31.03(c)(6)(B) presumption because there is
insufficient evidence of the evidentiary fact from which the presumption of the elemental fact of knowledge flows, i.e., he
was "an actor engaged in the business of obtaining abandoned or wrecked motor vehicles or parts of an abandoned or
wrecked motor vehicle for resale, disposal, scrap, repair, rebuilding, demolition, or other form of salvage." We agree.

Standards of Review


 Resolving Naranjo's complaint is necessarily a two-step process involving two different standards of review. First, we must
ascertain the meaning of section 31.03(c)(6)(B). "The construction to be given a statute is a question of law." State v.
Vasilas, 187 S.W.3d 486, 488 (Tex. Crim. App. 2006). Words not defined in a statute "are to be given their plain meaning,"
State v. Holcombe, 187 S.W.3d 496, 500 (Tex. Crim. App. 2006), cert. denied, 75 U.S.L.W. 3023 (U.S. Oct. 2, 2006) (No.
05-1640), "unless doing so would lead to an absurd result that the legislature could not have intended." Ex parte Ervin, 187
S.W.3d 386, 388 (Tex. Crim. App. 2005). "In determining the plain meaning of a word, we initially look to dictionary
definitions." Holcombe, 187 S.W.3d at 500.

 Once we have determined the meaning of section 31.03(c)(6)(B), we must then decide whether there is "sufficient
evidence" of the evidentiary fact, i.e., Naranjo was "an actor engaged in the business of obtaining abandoned or wrecked
motor vehicles or parts of an abandoned or wrecked motor vehicle for resale, disposal, scrap, repair, rebuilding, demolition,
or other form of salvage," to submit the section 31.03(c)(6)(B) presumption. See Tex. Pen. Code Ann. § 2.05(a)(1) (Vernon
Supp. 2006). A jury charge that fails to accurately instruct the jury on the law and its application is erroneous. Gray v. State,
152 S.W.3d 125, 127-28 (Tex. Crim. App. 2004).

The Meaning of Section 31.03(c)(6)(B)


 There is no dispute that Naranjo, as an employee of Perfection Collision, was "an actor," that is "one that takes part in any
affair." Webster's Ninth New Collegiate Dictionary 54 (1984). But the parties vigorously dispute whether, for purposes of
the section 31.03(c)(6)(B) presumption, an automobile body shop is engaged "in the business of obtaining abandoned or
wrecked motor vehicles or parts of an abandoned or wrecked motor vehicle for resale, disposal, scrap, repair, rebuilding,
demolition, or other form of salvage" and, if so, whether its employees are likewise engaged. We address only the second
issue.

 Certainly an employee is engaged in his employer's business for some purposes. (1) However, maintenance of the records
described in section 31.03(c)(6)(B) is a duty imposed only on "metal recyclers" and "salvage vehicle dealers." (2) In oral
argument, the State insisted this record keeping duty must also be imposed upon these types of businesses' employees -
whether mechanic, janitor, or secretary. In support of its argument, the State referred us to sections 501.091(7) and (17) of
the Texas Transportation Code, which define a "metal recycler" and a "salvage vehicle dealer" as "a person" "engaged in the
business of" metal recycling or salvage. See Tex. Transp. Code Ann. §§ 501.091(7), (17) (Vernon Supp. 2006). (3) These
statutory definitions are drafted quite broadly. However, section 2302.258(d) of the Occupations Code expressly recognizes
a distinction between "[a] salvage vehicle dealer" and "an employee of the dealer" by requiring both to "allow" a peace
officer's inspection. See Tex. Occ. Code Ann. § 2302.258(d) (Vernon 2004). We believe that, as reasonable as it is to
require both the entity and its employees to "allow" an inspection, it is equally as unreasonable - indeed absurd - to interpret
these statutes as imposing the statutory record keeping duties not only on the entities but also on every one of their
employees, regardless of whether the statutory record keeping duties are outside an employee's job function and therefore
beyond his ability to control. This we may not do. See Ex parte Ervin, 187 S.W.3d at 388 (holding that appellate courts are
obligated to interpret a statute in accordance with the plain meaning of its language, unless the language is ambiguous or the
plain meaning leads to absurd results that the legislature could not possibly have intended). We therefore hold that a
defendant's status as an employee of an automobile body repair shop - standing alone - is an insufficient basis upon which to
submit the section 31.03(c)(6)(B) presumption. Cf. Davis v. State, 658 S.W.2d 572, 576 (Tex. Crim. App. 1983) (holding
that section 43.23(e) presumption that "[a] person who promotes ... or possesses obscene material ... with intent to promote
it ... in the course of his business is presumed to do so with knowledge of its content and character" did not apply to
appellant when "[o]outside of his mere presence in a managerial capacity, there is not any circumstantial evidence to link
him to the booth, the projector, or the film."); see and compare Webb v. State, Nos. A14-89-00832-CR and
14-89-00833-CR, 1990 WL 113759, at *1 (Tex. App.-Houston [14th Dist.] Aug. 9, 1990, pet. ref'd) (not designated for
publication) (holding evidence sufficient to establish that Webb was engaged in the business described by section
31.03(c)(6) when investigators, proceeding on information gathered from a confidential informant that Webb was acquiring
stolen cars and cutting them up for sale, found on the premises "major component parts with vehicle identification numbers
which had been tampered with and vehicles with component part identification numbers which did not correspond to the
identification number on the dash plate"). Here, the only evidence of Naranjo's status at Perfection Collision is that he was
an employee. Accordingly, we hold the trial court erred in submitting the section 31.03(c)(6)(B) presumption to the jury. 

 Naranjo objected to the trial court's submission of the section 31.03(c)(6)(B) presumption. Therefore, he need only show
"some harm" to obtain reversal. This standard is clearly met here since submission of the presumption permitted conviction
without proof of the specific element to which the presumption applied - Naranjo's actual subjective knowledge when he
acquired the trailer that it was stolen. See In re Winship, 397 U.S. 358, 362-64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)
(holding requirement that State prove every element of offense beyond a reasonable doubt is constitutionally required).

Correctness of the Instruction


 Naranjo also argues that, even if the trial court was authorized to submit the section 31.03(c)(6)(B) presumption, its
submission was fatally flawed because it failed to inform the jury that it was required to find the evidentiary fact (Naranjo
was "an actor engaged in the business of obtaining abandoned or wrecked motor vehicles or parts of an abandoned or
wrecked motor vehicle for resale, disposal, scrap, repair, rebuilding, demolition, or other form of salvage") beyond a
reasonable doubt before it was authorized to presume the elemental fact (Naranjo had actual subjective knowledge that the
trailer was stolen). We again agree.

Applicable Law and Standard of Review


 As set forth above, if "the existence of the presumed fact is submitted to the jury," the jury must also be instructed, inter
alia,"that the facts giving rise to the presumption must be proven beyond a reasonable doubt." Tex. Pen. Code Ann.
§ 2.05(a)(2)(A) (Vernon Supp. 2006). Although Naranjo objected to including an instruction on the presumption in the
charge, he did not object to the failure to include the instruction required by section 2.05(a)(2)(A), i.e., "that the facts giving
rise to the presumption must be proven beyond a reasonable doubt." We therefore "cannot reverse the conviction absent a
finding 'the error is so egregious and created such harm that [appellant] 'has not had a fair and impartial trial.''" Bellamy v.
State, 742 S.W.2d 677, 685 (Tex. Crim. App. 1987).

The Missing Instruction


 In Bellamy, the Texas Court of Criminal Appeals held the trial court erred in instructing the jury on the presumption of
knowledge that second-hand property was stolen under section 31.03(c)(3) without also instructing the jury that it must find
"'the facts giving rise to the presumption' beyond a reasonable doubt, and if it has a reasonable doubt as to those facts, 'the
presumption fails and the jury shall not consider the presumption for any purpose.'" Id. at 683. So it is here. The State
argues, however, "[t]he trial court clearly charged the jury in accordance with section 2.05." As support for this argument,
the State offers the following mark-up of part of the charge:

 Therefore, if you believe from the evidence beyond a reasonable doubtthat Joe Naranjo knowingly or recklessly failed,
on receipt of the motor vehicle in question, to obtain a certificate of authority, sales receipt, or failed to obtain a certificate
of title showing that the motor vehicle in question was not subject to a lien or that all recorded liens on the motor vehicle
had been released, it is presumed, and you may find, [] that Joe Naranjo knew on receipt of the property that the property
had been previously stolen from another. However, you are not bound to so find and even if you do the State must still
prove beyond a reasonable doubt each and all of this and the other elements of the offense charged.



 If you have a reasonable doubt [] that Joe Naranjo knowingly or recklessly failed, on receipt of the motor vehicle in
question, to obtain a certificate of authority, sales receipt, or failed to obtain a certificate of title showing that the motor
vehicle in question was not subject to a lien or that all recorded liens on the motor vehicle have been released, the
presumption that Joe Naranjo knew on receipt of the property that the property had been previously stolen from
another fails, and you are not to consider the presumption for any purpose.



Apparently the State believes the charge was proper because it applies the reasonable doubt standard to the failure to obtain
and maintain the required records. This is incorrect. As Bellamy illustrates, the charge must apply the reasonable doubt
standard to the evidentiary fact. See Bellamy, 742 S.W.2d at 683. Here, the evidentiary fact is not whether Naranjo
maintained the proper record of title but whether he was "[a]n actor engaged in the business of obtaining abandoned or
wrecked motor vehicles or parts of an abandoned or wrecked motor vehicle for resale, disposal, scrap, repair, rebuilding,
demolition, or other form of salvage." Nothing in the court's charge required the jury to make this finding, beyond a
reasonable doubt or otherwise.

 The State's reliance on Willis v. State, 790 S.W.2d 307 (Tex. Crim. App. 1990) is likewise misplaced. As the State's
quotation from Willis illustrates, the Willis charge - unlike the charge inBellamy and in this case - instructed the jurors that
they could find the elemental fact only if they first found the evidentiary fact to have been proven beyond a reasonable
doubt. See id. at 311 ("Unlike Bellamy's charge, the charge in this case unequivocally informs the jurors that 'if [the facts
giving rise to the presumption] are proven beyond a reasonable doubt, you may find that the defendant knew that the
property in question ... had been stolen, if it had been, but you are not bound to so find.'") (emphasis in the original).

 Pursuant to Bellamy, we hold the trial court's failure to instruct the jury pursuant to section 2.05(a)(2)(A) "that the facts
giving rise to the presumption must be proven beyond a reasonable doubt" constitutes error. Also pursuant to Bellamy, we
hold the "egregious" nature of this error is "manifest." See Bellamy, 742 S.W.2d at 685. As in Bellamy, "[w]hether appellant
knew the property he received was stolen was not just one of many contested issues at trial, it was the sole contested issue";
the prosecutor "reread and commend[ed] ... use [of the presumption] to the jury"; and the "jury might well have chosen to
resolve [its] uncertainty [on the issue of appellant's guilty knowledge] by ignoring whatever conflict it otherwise perceived
in the evidence pertaining to appellant's knowledge, and simply relying on the undisputed fact that he failed to record the
statutory information when he acquired the property". See id. at 685-86.

 

Legal Sufficiency


 Usually charge error mandates that we reverse the judgment and remand the cause for a new trial. See id. But Naranjo
argues he is entitled to an acquittal because, absent the improper presumption, there is legally insufficient evidence to
establish that he knew the trailer was stolen. We agree Naranjo is entitled to appellate review of his legal sufficiency
argument against a hypothetically-correct charge. See Curry, 30 S.W.3d at 403-06.

 In Curry, the Texas Court of Criminal Appeals held the trial court erred in deleting from its aggravated kidnaping charge
the phrase "by using and threatening to use deadly force namely, a firearm" because this phrase "was a manner or means of
committing an element of the offence" and thus not surplusage. Id. at 403. After finding error in the charge, the court next
considered whether the court of appeals erred in measuring the sufficiency of the evidence against the charge actually given
rather than a hypothetically-correct charge that included the quoted phrase. The court held that it did, stating as follows:

 If the evidence is insufficient to support Curry's conviction, the remedy is acquittal. That remedy is greater than simply
granting Curry a new trial. Curry's sufficiency point of error must be addressed, regardless of the fact that he has prevailed
on his point of error concerning an erroneous amendment of the indictment.



 ...



 [In Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997),] [w]e explained that a judgment of acquittal should be
reserved for those instances in which there is an "actual failure in the State's proof of the crime."



 Here, the language at issue is a manner or means of an element of the offense. If the State failed to prove that manner or
means, then there was an "actual failure in the State's proof of the crime." So under Malik, it follows that this phrase must
factor into a sufficiency analysis.



Id. at 404-05. We must therefore address Naranjo's sufficiency issue in light of a hypothetically-correct charge - one that
instructed the jury to find Naranjo guilty only if it found that, at the time he acquired the trailer, he had actual subjective
knowledge that it had been stolen by another.

Applicable Law and Standard of Review


 When, as here, the State specifically pleads in the indictment that the accused committed theft by receiving property
knowing it was stolen by another and this allegation is incorporated in the court's charge, "unexplained possession of
recently stolen property is not sufficient proof of theft." Chavez v. State, 843 S.W.2d 586, 588-89 (Tex. Crim. App. 1992).
But evidence of "unexplained possession of recently stolen property" may nonetheless be a circumstance to be considered in
a sufficiency analysis. See id. "However, before such rule of law may be invoked by the State, it must establish all of the
elements of the rule, namely, it must establish that such possession was personal, recent, unexplained, and involved a
distinct and conscious assertion of the property by the defendant." Sutherlin v. State, 682 S.W.2d 546, 549 (Tex. Crim. App.
1984).

 "Generally, the shorter the interval between the theft and the possession, the stronger the inference, although the cases will
vary according to such factors as the ease with which such property can be transferred." Jackson v. State, 12 S.W.3d 836,
839 (Tex. App.-Waco 2000, pet. ref'd) (citingHardage v. State, 552 S.W.2d 837, 840 (Tex. Crim. App. 1977)). If the
defendant explains his possession of the stolen property, it is for the jury to determine as a matter of fact whether the
explanation is unreasonable or false, which may be shown by circumstantial evidence. See Adams v. State, 552 S.W.2d 812,
815 (Tex. Crim. App.1977) (a burglary case but citing for this proposition two theft cases, Smith v. State, 518 S.W.2d 823
(Tex. Crim. App. 1975), and Huff v. State, 492 S.W.2d 532 (Tex. Crim. App. 1973), both overruled on other grounds by
Hardesty v. State, 656 S.W.2d 73 (Tex. Crim. App. 1983)).

 On appeal, we review the jury's resolution of these factual matters under the familiar legal sufficiency standard. Simmons v.
State, 109 S.W.3d 469, 472 (Tex. Crim. App. 2003) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979)). Accordingly, in this case, we view the evidence in the light most favorable to the verdict to determine
whether any rational trier of fact could have found the disputed fact - that Naranjo, at the time he acquired the trailer, had
actual subjective knowledge that it had been stolen by another - beyond a reasonable doubt. See Simmons, 109 S.W.3d at
472.

Slight But Legally Sufficient Evidence


 It is undisputed that Naranjo made a "distinct and conscious assertion" to assert his "personal" right to possess a stolen
trailer. And, since it is plainly more difficult to transfer ownership of a trailer, which must be registered, see Tex. Transp.
Code Ann. § 502.002 (Vernon 1999), than, for instance, a television, a jury could have found Naranjo's thirteen-month
possession of the trailer sufficiently "recent" for the State to invoke the "unexplained possession" rule. But, Naranjo argues,
the State failed to disprove his explanation of the circumstances of his acquisition of the trailer. This is true. But a jury
could reasonably find Naranjo's explanation of his acquisition of the trailer to be unreasonable, if not outright false, since
the length of time he claimed to have owned the property - over two years - exceeded the undisputed length of time it had
been reported stolen - fourteen months. And, contrary to Naranjo's argument, it is simply immaterial that Sevino agreed
Naranjo may have been mistaken as to how long he possessed the trailer; under the legal sufficiency standard of review, we
must view the evidence in the light most favorable to the jury's verdict. Moreover, the State's evidence did not prove the
reasonableness or veracity of Naranjo's explanation; and Naranjo offered no evidence to corroborate his claim. See McElyea
v. State, 599 S.W.2d 828, 829 (Tex. Crim. App. [Panel Op.] 1980) (concluding defendant rebutted "presumption of guilt"
based on possession of stolen property because testimony of defense witnesses corroborated), overruled on other grounds
by Hardesty v. State, 656 S.W.2d 73 (Tex. Crim. App. 1983); Huff v. State, 492 S.W.2d at 533 (same). In light of these
circumstances, we hold a reasonable juror could have rejected Naranjo's explanation and applied the rule of "unexplained
possession," so that his guilt might be inferred. And the inference flowing from unexplained possession of recently stolen
property is not the only inference of guilt a rational juror could glean from this record.

 It is true, as Naranjo argues, that the State adduced no evidence regarding when the trailer's identification numbers had
been ground down or when they and the yellow pin stripe had been painted over or that Naranjo was aware of it. But it is
undisputed the trailer was in this condition while in Naranjo's possession; and a jury could reasonably infer the grinding and
painting had been done by Naranjo in his capacity as an employee of Perfect Collision, an automobile body shop that by
definition would have the equipment necessary to perform the grinding and painting functions. Moreover, when Sevino
gave Naranjo an opportunity to provide documentary proof or other facts to support his claim, he refused to do so. And,
when the trailer was impounded, Naranjo did not appear upset, a circumstance that was unusual in Detective Sevino's
experience - experience that was corroborated by Rudy Naranjo's vehement protest when, minutes before the trailer was
found, Sevino threatened to impound the customized jet ski.

 It is also true, as Naranjo argues, that the State adduced no direct evidence that Naranjo knew either that he was required to
obtain a certificate of title for the trailer or that he was required to register the trailer in his own name within a specific
period of time after its acquisition. Tex. Transp. Code Ann. § 502.002 (Vernon 1999). But "the law is clear that a defendant
is presumed to know statutory law." Small v. State, 809 S.W.2d 253, 256 (Tex. App.-San Antonio 1991, pet. ref'd).

 The evidence to support a finding that Naranjo had actual subjective knowledge when he acquired the trailer that it was
stolen is admittedly slight. But, considering all the relevant facts and the reasonable inferences they yield, we hold this
slight evidence is legally sufficient to support a finding of actual knowledge. Accordingly, Naranjo is not entitled to an acquittal.



Conclusion


 Although there is legally sufficient evidence in this record from which a rational jury might reasonably conclude that Joe
Naranjo knew when he acquired the trailer that it was stolen, the jury in this case was not instructed that it was required to
make this finding. It was instead instructed that it could find Naranjo guilty based on the presumption of knowledge
contained in section 31.03(c)(6)(B). Because this instruction was fatally flawed and should not in any event have been
given, we reverse the trial court's judgment and remand the cause to the trial court for a new trial.



 Sarah B. Duncan , Justice

Publish



1. Cf. Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 486-87 (Tex. 1998) (holding that insurance
company employee was engaged in the business of insurance within the meaning of article 21.21 of the Texas Insurance
Code because he "personally carried out the transaction that forms the core of [the plaintiff's] complaint");TMC Worldwide,
L.P. v. Gray, 178 S.W.3d 29, 32-33 (Tex. App.-Houston [1st Dist.] 2005, no pet.) (quoting non-competition agreement
prohibiting employee from "directly or indirectly in any capacity either as owner, partner, shareholder, broker, dealer, agent,
employee, consultant, or otherwise, engage in [his former employer's] business");Butler v. Arrow Mirror & Glass, Inc., 51
S.W.3d 787, 795 (Tex. App.-Houston [1st Dist.] 2001, no pet.) (quoting non-competition agreement prohibiting employee
from "directly or indirectly, either as an employee, employer, officer, director, consultant, agent, principal, owner or in any
other individual or representative capacity engage in a business that is in competition with [his former employer's
business]").

2. Tex. Occ. Code Ann. §§ 2302.001(1) (Vernon 2004) (the terms "metal recycler" and "salvage vehicle dealer" "have the
meanings assigned by Section 501.091, Transportation Code), 2302.202 (imposing record keeping duty on "salvage vehicle
dealer"), 2302.205 (requiring "metal recycler" to submit ownership document to the Texas Department of Transportation),
2302.252-254, 2302.256 (imposing record keeping duties on "salvage vehicle dealer").

3. At the time Naranjo was alleged to have committed the crime, former articles 6687-2, and 6687-2b defined a "salvage
vehicle dealer" as "a person who is engaged in this state in the business of acquiring, selling, or otherwise dealing in salvage
vehicles or vehicle parts of a type required to be covered by a salvage vehicle certificate of title or nonrepairable vehicle
certificate of title under a license issued by the department that allows the holder of the license to acquire, sell, dismantle,
repair, or otherwise deal in salvage vehicles." Act of May 18, 1995, 74th Leg., R.S., ch. 404, §§ 1, 2, 4, 1995 Tex. Gen.
Laws 2973, 2974, 2978, 2980, repealed by Act of May 22, 2001, 77th Leg., R.S., ch. 1421, § 13, 2001 Tex. Gen. Laws
4570, 5020, effective June 1, 2003. However, since the versions of these statutes now codified in the Texas Transportation
Code are not substantially different, we refer to the codified versions.