# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-09-00166-CR

---

**Elderidge Vanderhorst Hills, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
NO. 63,950, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Elderidge Vanderhorst Hills of the offense of assault on a public servant, *see* Tex. Penal Code Ann. § 22.01 (West Supp. 2009), and the district court sentenced him to eight years in prison. Hills argues that (1) the jury should have been instructed on a lesser-included offense because the corrections officer was not lawfully discharging an official duty when the assault occurred, (2) the trial was not fair and impartial because the jury engaged in misconduct, and (3) the indictment was invalid because the names of the witnesses were not endorsed on it. We affirm the judgment of conviction.

At the time of the offense, Hills was incarcerated in the Bell County jail. On October 10, 2008, Corrections Officer Yushica Burton was supervising the movement of Hills from one cell block (210) to another (318). Hills, upset by the news that he was being moved, responded with profanity and communicated that he did not understand why he was being moved. When Hills

threatened violence toward the inmates in cell 318, Burton placed him in a visitation room to calm down. When placed in the visitation room, however, Hills became more violent and began beating on the window, demanding "some rank," meaning that he wanted to speak to a supervisor.

Burton called Corporal Porter, who instructed Burton to escort Hills downstairs and to put him in the "violent tank," a small one-man holding cell, until she could speak with him. After Burton escorted Hills downstairs, she turned him over to Officer Samuel Hopkins. Hopkins and several other officers walked Hills down the hall to the holding cell, but when the door was opened and Hills began to walk in, he suddenly turned around, said he was not going in there, and struck Officer Hopkins in the chest with a closed fist. Hills grabbed Hopkins's arm and said that "he would slam his big ass." Officers then subdued Hills and placed him in the holding room.

Hills was indicted for the offense of assault on a public servant. *See id.* A jury convicted Hills as charged, and the district court assessed punishment at eight years in prison.

In his first issue Hills argues that he was entitled to the lesser-included jury charge of misdemeanor assault because Officer Hopkins was unlawfully discharging his official duties at the time of the assault. *See Hall v. State,* 158 S.W.3d 470, 471 (Tex. Crim. App. 2005). Alternatively, Hills argues that he was entitled to a mistake-of-fact defensive instruction. *See Willis v. State,* 790 S.W.2d 307, 314 (Tex. Crim. App. 1990).

As an initial matter, we note that Hills raised neither of these issues at trial and has, therefore, failed to preserve them for our review. *See* Tex. R. App. P. 33.1(a). Neither lesser-included offenses nor defensive issues are considered to be "law applicable to the case," and therefore, a party's failure to request their inclusion in the jury charge is not considered charge error

but, rather, waives the party's ability to raise these issues on appeal. *Tolbert v. State*, 306 S.W.3d 776, 780-81 (Tex. Crim. App. 2010) (lesser-included offenses); *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (defensive issues). At trial, Hills objected to the jury charge only in that it did not include a self-defense instruction, the inclusion of which would have required Hills to admit to the other elements of assault, which he did not do. *See, e.g.*, *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007).

Even if Hills had preserved these issues for review, his arguments find no support in the record. Hills first argues that Officer Hopkins acted unlawfully and Hills was, therefore, entitled to the lesser-included offense of misdemeanor assault. *See* Tex. Penal Code Ann. § 22.01(b). A lesser-included offense may only be submitted to the jury when the record contains some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser-included offense. *Hall*, 158 S.W.3d at 473. Here, there is no evidence that would allow a jury to reach such a conclusion.

The evidence shows that Hopkins was engaged in the lawful exercise of his duties. At the time of the incident, Hopkins was on duty, in uniform, and supervising inmates in his official capacity. He was called to assist in moving Hills to the "violent tank." There is nothing in the record to refute this evidence, and Hills's testimony gives no indication that he ever questioned that Hopkins was acting in his official capacity. As Hopkins was acting within his capacity as a peace officer, he was acting within the lawful discharge of his official duties. *See Hall*, 158 S.W.3d at 474.

3

The record also demonstrates that to the extent that Hopkins used force, he was justified, and there is no indication that excessive force was used. Given that Hopkins was acting within his capacity as a peace officer, he could be said to be acting outside the lawful discharge of his official duties only if he were criminally or tortiously abusing his office as a public servant. *See id.* There is no evidence in the record to support such a conclusion. Hopkins was called to assist in moving Hills to the "violent tank." The record gives no indication that Hopkins used any force at all in escorting Hills down the hall to the holding cell, and Hills seemed to be compliant until the door to the cell was opened. It was not until Hills began entering the cell that he refused to enter and resisted, admitting at trial to pushing Hopkins. At that point, officers responded with force in an attempt to subdue Hills. Thus, even to the extent that Hopkins used force to subdue Hills, there is sufficient evidence to show that the use of force was justified. *See* Tex. Penal Code Ann. § 9.53 (West 2003) (authorizing use of force by correctional officers to maintain security of correctional facility or to protect their own security). The record evidence shows that it was reasonable for officers, including Hopkins, to use force to maintain security and to protect their own safety, and it cannot be said that they were acting outside the scope of the discharge of their official duties. *See Hall*, 158 S.W.3d at 475-76.

In the alternative, Hills argues that he was entitled to a defensive instruction of "mistake of fact." *See Willis*, 790 S.W.2d at 314. An accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the

4

evidence. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). Here, however, there is no evidence of mistake of fact.

Although Hills fails to elaborate on this argument, we presume that he is asserting the argument to show that—due to a mistake of fact—there is no evidence of one or more elements of the offense of assault on a public servant. To prove the offense of assault on a public servant, the State must show that the actor:

(1)   intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

(2)   intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

(3)   intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

Tex. Penal Code Ann. § 22.01(a). This offense is a third degree felony where, as here, the assault is committed against:

a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant.

*Id.* § 22.01(b)(1).

As to the element requiring that the actor "intentionally, knowingly, or recklessly cause bodily injury to another," it is undisputed that Hills pushed Hopkins, and it is undisputed that Hopkins was injured. As to whether Hills knew that Hopkins was a public servant and acting

in his official capacity, as noted, Officer Hopkins was on duty and in uniform. Nothing in Hills's testimony indicates that he ever questioned or was mistaken as to the authority of Hopkins to act as a prison official or that Hills questioned whether Hopkins was on duty or acting in his official capacity. As discussed, the force used by prison officials in this case was solely to maintain security and to protect their own safety and was, therefore, authorized by statute. *See Hall*, 158 S.W.3d at 475-76.

Even if, as Hills asserts, he questioned the decision of prison officials to put him in the holding tank as violating his constitutional rights, this would not be sufficient to show that Hopkins was acting outside of his official capacity. If Hills was mistaken as to anything, it was as to the applicable law, not as to a matter of fact. *Compare* Tex. Penal Code Ann. § 8.02 (West 2003) (mistake of fact), *with id.* § 8.03 (West 2003) (mistake of law). Hills has not raised the issue of mistake of law, and even if he had, mistake of law would be no defense to prosecution in these circumstances. *Id.* § 8.03 (mistake of law is affirmative defense only where actor reasonably believed conduct charged did not constitute a crime and reasonably relied upon either administrative order or written interpretation of law contained in opinion of court of record). Accordingly, we overrule Hills's first issue.

In his second issue, Hills argues that "the jury was engaged in such misconduct that the trial wasn't rendered fair and impartial." Specifically, Hills argues that the trial court should have excused a member of the venire panel who was an acquaintance of one of the correction officers, Officer Ryan Blankemeier. Hills also argues that his trial was not fair and impartial because he was tried by a jury that was "exclusively of a predominantly caucasian descent or nationality."

6

As to the juror specifically challenged by Hills on appeal, we do not understand Hills's argument to be that this juror should have been struck for cause. *See* Tex. Code Crim. Proc. Ann. art. 35.16 (West 2006). Indeed, after questioning this juror extensively, Hills made no challenge for cause as to this juror, and the juror was not struck by Hills by way of peremptory challenge. Hills argues, rather, that the district court should have sua sponte excluded this juror, with or without the consent of the parties.

In support of his argument, Hills cites article 35.03 of the code of criminal procedure, which provides:

> Except as provided by Sections 2 and 3 of this article, the court shall then hear and determine excuses offered for not serving as a juror, including any claim of an exemption or a lack of qualification, and if the court considers the excuse sufficient, the court shall discharge the prospective juror or postpone the prospective juror's service to a date specified by the court, as appropriate.

*Id.* art. 35.03 (West Supp. 2009). However, the juror about whom Hills complains neither asked to be excused from the jury nor offered any reasons why he would not be qualified. Rather, this juror merely disclosed to the court that he was acquainted with Officer Blankemeier, one of the witnesses in the case. Upon further questioning, the juror revealed that Blankemeier used to work for the City of Temple as a police officer at the same time that this juror worked for the City of Temple as a firefighter. However, the juror stated that he had not spent any time with Blankemeier socially and, indeed, did not even know Blankemeier's first name. The juror further asserted that nothing about his knowledge of Blankemeier would prohibit him from sitting on the jury, listening to the evidence, and evaluating Blankemeier fairly.

7

The record shows that, following this exchange, Hills made no objection to the inclusion of this juror at trial. This juror did not ask to be excused and presented neither any reason why he would not be qualified nor any reason why he would be biased in any way. In such circumstances, the district court had no reason to excuse this juror. *See id.*

We also find no merit to Hills's argument that the trial was not fair and impartial because he was tried by a jury that was "exclusively of a predominantly caucasian descent or nationality." Hills relies on *Pondexter v. State*, 942 S.W.2d 577, 580 (Tex. Crim. App. 1996), in which, citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979), the Texas Court of Criminal Appeals explained:

> [I]n order to establish a prima facie violation of the requirement that there be a fair cross section of the community represented, appellant must show: 1) that the group alleged to be excluded is a "distinctive" group in the community; 2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

Even if Hills had preserved this issue by raising it at trial—which he did not—*see* Tex. Code Crim. Proc. Ann. art. 35.261(a) (West 2006); *Hill v. State*, 827 S.W.2d 860, 864 (Tex. Crim. App. 1992), he has failed to make a prima facie case that venire members were peremptorily excluded on the basis of race, s*ee Williams v. State*, 301 S.W.3d 675, 688 (Tex. Crim. App. 2009). Hills has presented no evidence of the racial makeup of the panel and no evidence to show that peremptory challenges made by the State were based on race. *See* Tex. Code Crim. Proc. Ann. art. 35.261(a); *Williams*, 301 S.W.3d at 688-90. Accordingly, we overrule Hills's second issue.

8

In his third issue, Hills argues that the indictment was invalid because the names of the witnesses were not endorsed on it. He cites article 20.20 of the code of criminal procedure, which provides:

> The attorney representing the State shall prepare all indictments which have been found, with as little delay as possible, and deliver them to the foreman, who shall sign the same officially, and said attorney shall endorse thereon the names of the witnesses upon whose testimony the same was found.

Tex. Code Crim. Proc. Ann. art. 20.20 (West 2005). These provisions, however, are directory, not mandatory. *Jenkins v. State*, 468 S.W.2d 432, 435 (Tex. Crim. App. 1971). Hills made no objection to the indictment prior to trial, and there is no indication that Hills was harmed in any way by the absence of these endorsements. Accordingly, we overrule Hills's third issue.

Having overruled each of Hills's issues, we affirm the judgment of conviction.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed: June 11, 2010

Do Not Publish

9